IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DIMITRI CHARALAMBOPOULOS, | § | |
| | § | |
| Plaintiff-counterdefendant, | § | |
| | § | Civil Action No. 3:14-CV-2424-D |
| VS. | § | |
| | § | |
| CAMILLE GRAMMER, | § | |
| | § | |
| Defendant-counterplaintiff. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action brought against an American television personality by her former boyfriend—whom she has accused of assaulting and stalking her—the court must analyze and apply the Texas Citizens' Participation Act ("TCPA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001-27.011 (West Supp. 2014), an anti-SLAPP statute.[1]   Plaintiff-counterdefendant Dimitri Charalambopoulos ("Charalambopoulos") sues defendant-counterplaintiff Camille Grammer ("Grammer") to recover on claims for defamation, defamation per se, malicious prosecution, negligence, gross negligence, fraud, and intentional infliction of emotional distress ("IIED").  Grammer moves to dismiss under the TCPA, to stay discovery, and for a hearing on her motion to dismiss.  Charalambopoulos moves the

_____

[1]SLAPP is an acronym for strategic lawsuit against public participation. *See, e.g., In re Lipsky*, 411 S.W.3d 530, 536 n.1 (Tex. App. 2013, orig. proceeding) ("Chapter 27, also known as the Texas Citizens' Participation Act, is 'considered to be anti-SLAPP legislation. SLAPP stands for Strategic Lawsuit Against Public Participation, and approximately twenty-seven states have enacted anti-SLAPP legislation.'" (quoting *Jennings v. WallBuilder Presentations, Inc.*, 378 S.W.3d 519, 521 & n.1 (Tex. App. 2012, pet. denied)).

court to permit discovery.  Some of the issues presented are unsettled questions that require that the court make *Erie*-guesses.[2]  For the reasons explained, the court dismisses Charalambopoulos' claims for negligence, gross negligence, fraud, and IIED; declines to dismiss his claim for malicious prosecution; holds that certain grounds for his claims for defamation and defamation per se should be dismissed and that others should not; and allows him to conduct specified and limited discovery as to the remaining grounds for his claims for defamation and defamation per se and file a supplemental response.

I

According to Charalambopoulos' state-court first amended petition ("amended petition"), he and Grammer were boyfriend and girlfriend for more than two years.  Grammer is an American television personality and the former wife of actor Kelsey Grammer.

Grammer was diagnosed with a uterine tumor in 2013 and initially sought treatment near her home in California.  With assistance from Charalambopoulos, she later sought a second opinion and treatment at M.D. Anderson Cancer Center ("M.D. Anderson") in Houston, where she underwent surgery in October 2013.  Charalambopoulos had contacted a childhood friend to request that the friend use her connections to enable Grammer to obtain treatment at M.D. Anderson.  Through these efforts, Grammer was admitted for treatment.

Charalambopoulos, who resides in Dallas, traveled to Houston to support and help Grammer during the initial part of her post-surgery recovery.  Grammer, her mother, an

---

[2]*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

assistant, and Charalambopoulos all stayed at the Hotel ZaZa.  Charalambopoulos alleges that he provided comfort to Grammer and helped her with her catheter bag, medications, showering, and other needs.

Charalambopoulos asserts that, on the night of October 15, 2013, he fell asleep in Grammer's bed.  At 1:51 a.m. on October 16, an incoming text message on his cell phone woke Grammer.  The message was from the female childhood friend who had helped Charalambopoulos get Grammer admitted to M. D. Anderson.  The text message read: "Sorry.  Call me when you have some time tomorrow."  Am. Pet. ¶ 9.  After Grammer read the message, she became enraged, accused Charalambopoulos of being a liar and cheater, broke his cell phone, and threatened to call the police and inform them that he had assaulted her.  Charalambopoulos told Grammer that he was leaving, gathered his belongings, and departed from the hotel.

According to Charalambopoulos, after he left, Grammer staged the hotel room to make it appear that he had assaulted her (the "Alleged Assault"), and she then went to the hotel lobby where she asked an employee to call the police.  M. H. Vo ("Officer Vo"), a Houston Police Department ("HPD") officer, was dispatched to the scene.  After interviewing Grammer and completing his initial investigation, Officer Vo departed.  He did not summon medical help, issue a bulletin for Charalambopoulos to be arrested, or take any other action.  Charalambopoulos alleges that, after Officer Vo departed, Grammer used makeup to create the appearance that an assault had occurred, and she requested that her mother take photographs.

- 3 -

After Grammer returned to California, she filed on October 29, 2013 a request for a domestic violence restraining order (the "Request for Restraining Order") in the Los Angeles County Superior Court based on the Alleged Assault. She attached to the request the photographs that she had allegedly staged. That same day, Grammer tweeted the following to more than 198,000 followers on her Twitter account: "Info will come out today that is jaw dropping. And women can't be silenced after being physically abused. Yes, it was horrible what happened to me two days out of the hospital. I was in fear for my life." Am. Pet. ¶ 15 (internal quotation marks omitted).

Once the Request for Restraining Order was filed, the story of the Alleged Assault "went viral" and was picked up by most major national celebrity media outlets, including Access Hollywood, Entertainment Tonight, Hollywood Gossip, TMZ, E-Online, and Radar Online. These media outlets released stories alleging that Charalambopoulos had assaulted Grammer, quoting Grammer's statements attached to the Request for Restraining Order and showing Charalambopoulos' face juxtaposed with the photographs Grammer filed in support of the Request for Restraining Order. On November 14, 2013, Grammer appeared on *The Dr. Oz Show* and stated that she had been "physically abused and assaulted." *Id.* ¶ 16.

On November 22, 2013 the HPD filed felony charges against Charalambopoulos for assault of a family member and impeding breath. As a result of the felony charges, a Harris County, Texas magistrate judge issued on November 25, 2013 an order for emergency protection (the "Protective Order") against Charalambopoulos. In response to Grammer's Request for Restraining Order, a California Commissioner on January 6, 2014 issued a

restraining order against Charalambopoulos (the "Restraining Order"). These legal proceedings were covered by the major celebrity gossip websites, which reported that Charalambopoulos had been charged with a felony and that Grammer had obtained a restraining order against him.

Charalambopoulos alleges that in April 2014 Grammer released a false report that he and an unidentified woman had driven to Grammer's home and informed the security guard that they had an appointment with her. This "stalking story" (the "Alleged Stalking") was released to multiple websites, one of which (RadarOnline.com) quoted an unidentified law enforcement source as saying that "[Grammer] wanted to make sure who it was and had her security team pull the surveillance video at her gate. She viewed it and positively identified her ex as the man trying to gain access to her house, says the source." Am. Pet. ¶ 18 (internal quotation marks omitted). According to Charalambopoulos, the release of the story caused headlines to be posted "all over the internet" by various websites depicting him as a stalker. *Id.* He cites as an example that "Dailymail.co.uk published the following headline on or about Saturday, April 12, 2014 'Camille Grammer allegedly "in HIDING" after ex-boyfriend she has a restraining order against appears at her home.'" *Id.* No formal investigation was ever undertaken, however, and no legal action was initiated relating to these events.

On May 28, 2014 a Harris County, Texas grand jury issued a "no bill," dismissing all criminal charges stemming from Grammer's allegation that Charalambopoulos had assaulted her on October 16, 2013. Charalambopoulos then filed this lawsuit against Grammer in Texas state court, alleging claims for defamation, defamation per se, malicious prosecution,

negligence, gross negligence, fraud, and IIED.  Grammer removed the case to this court.  She now moves to dismiss Charalambopoulos' amended petition under the TCPA, to stay discovery, and for a hearing on her motion to dismiss.  Charalambopoulos moves under the TCPA to conduct discovery.

## II

Grammer moves under the TCPA—an anti-SLAPP statute—to dismiss Charalambopoulos' lawsuit.

The TCPA is intended "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." § 27.002.[3]  "To promote these purposes, [the TCPA] creates an avenue at the early stage of litigation for dismissing unmeritorious suits that are based on the defendant's exercise of the rights of free speech, petition, or association as those rights are defined within the [statute]."  *In re Lipsky*, 411 S.W.3d 530, 539 (Tex. App. 2013, orig. proceeding).  "If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action." § 27.003(a).  Once a motion to dismiss is filed, all discovery is suspended until the court rules on the motion to dismiss, unless the court on a showing of good cause allows specified and limited discovery relevant to the

_____

[3]All citations are to the Texas Civil Practice and Remedies Code unless otherwise noted.

motion.  §§ 27.003(c) and 27.006(b).

Under § 27.005(b) and (c), once a motion to dismiss is filed under § 27.003, unless "the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question," § 27.005(c),

> a court shall dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association.

§ 27.005(b).  Under § 27.005(d), even if the party bringing the legal action makes the required prima facie showing under the clear and specific evidence standard, "the court shall dismiss the legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." § 27.005(d).

"'Exercise of the right of free speech' means a communication made in connection with a matter of public concern." § 27.001(3).  "'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." § 27.001(1).  "A '[m]atter of public concern' includes an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." § 27.001(7).

As pertinent to this lawsuit, the exercise of the right to petition includes "a communication in or pertaining to . . . a judicial proceeding [or] an official proceeding, other

than a judicial proceeding, to administer the law," § 27.001(4)(A)(i) and (ii), and "any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state," § 27.001(4)(E).[4]

---

[4]In its entirety, the TCPA defines the "Exercise of the right to petition" as follows:

"Exercise of the right to petition" means any of the following:
(A) a communication in or pertaining to:
(i) a judicial proceeding;
(ii) an official proceeding, other than a judicial proceeding, to administer the law;
(iii) an executive or other proceeding before a department of the state or federal government or a subdivision of the state or federal government;
(iv) a legislative proceeding, including a proceeding of a legislative committee;
(v) a proceeding before an entity that requires by rule that public notice be given before proceedings of that entity;
(vi) a proceeding in or before a managing board of an educational or eleemosynary institution supported directly or indirectly from public revenue;
(vii) a proceeding of the governing body of any political subdivision of this state;
(viii) a report of or debate and statements made in a proceeding described by Subparagraph (iii), (iv), (v), (vi), or (vii); or
(ix) a public meeting dealing with a public purpose, including statements and discussions at the meeting or other matters of public concern occurring at the meeting;
(B) a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;
(C) a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;
(D) a communication reasonably likely to enlist public

"'Exercise of the right of association' means a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." § 27.001(2).

"In determining whether a legal action should be dismissed under [the TCPA], the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." § 27.006(a).

### III

The first sequential step in deciding Grammer's motion to dismiss is evaluating whether, as § 27.005(b) requires, she has shown by a preponderance of the evidence that Charalambopoulos' legal action "is based on, relates to, or is in response to [her] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association."

Grammer contends that Charalambopoulos' amended petition is based on, relates to, and is in response to her conduct in reporting two incidents to law enforcement officials and filing the Request for Restraining Order, all of which implicate the exercise of her right to petition, as defined by the TCPA. She maintains that Charalambopoulos' other allegations of actionable conduct—statements to the Hotel ZaZa employee, statements to doctors about

---

participation in an effort to effect consideration of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding; and
(E) any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state.

§ 27.001(4).

- 9 -

the Alleged Assault, social media comments about the Request for Restraining Order, a response to a question on a television program about the Alleged Assault, and statements to media outlets based on the report made with the Los Angeles County Sheriff's Department—are likewise all based on, relate to, or are in response to either her making a police report or filing the Request for Restraining Order.  Alternatively, Grammer posits that her statements to third parties, such as doctors, media outlets, or on social media, implicate the exercise of her right of free speech, as defined by the TCPA.  She contends that these statements fall within TCPA coverage because they were made in connection with a matter of public concern—they relate to reporting a possible crime and to her and the public's health, safety, and well-being—and because Charalambopoulos is a limited-purpose public figure, having achieved public attention through his relationship of more than two years with Grammer that predated the Alleged Assault.

Charalambopoulos responds that, because Grammer's statements that are contained in a police report, made to law enforcement officers, and submitted to the California court in connection with the Request for Restraining Order are false, as demonstrated by his affidavit, they do not qualify as protected speech; that Grammer's false statements to third parties, such as doctors, media outlets, and on social media, are not statements made in connection with a matter of public concern and do not implicate her right to free speech because the case authority on which Grammer relies to establish these requirements is factually distinguishable; that Grammer is incorrect in asserting that Charalambopoulos is a limited-purpose public figure because it was Grammer, not he, who "thrust[] [him] to the

- 10 -

forefront of particular public controversies," P. Br. 9 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)) (internal quotation marks omitted); and that because Grammer has not carried her burden of showing that Charalambopoulos' claims for defamation, malicious prosecution, and other malicious conduct are based on, relate to, or are in response to Grammer's exercise of constitutionally protected rights, the court should deny her motion to dismiss on this basis alone.

## IV

The court considers first whether Grammer has shown by a preponderance of the evidence[5] that Charalambopoulos' legal action is based on, relates to, or is in response to Grammer's exercise of the right to petition.

## A

The TCPA provides, in pertinent part, that the exercise of the right to petition means "a communication in or pertaining to . . . a judicial proceeding [or] an official proceeding, other than a judicial proceeding, to administer the law." § 27.001(4)(A)(i) & (ii). An "'[o]fficial proceeding' means any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant." § 27.001(8). A Public Servant means, *inter alia*, a person who is "an officer, employee, or agent of government." § 27.001(9)(A).

---

[5]All findings made in this memorandum opinion and order concerning whether Grammer has made the required showing under § 27.005(b) are made under a preponderance of the evidence standard, as § 27.005(b) requires.

Grammer has shown that, to the extent the claims of Charalambopoulos' lawsuit are based on Grammer's filing the Request for Restraining Order, they are based on, relate to, or are in response to her exercise of the right to petition, and thus fall within § 27.005(b). *See Fitzmaurice v. Jones*, 417 S.W.3d 627, 629, 632 (Tex. App. 2013, no pet.) ("There [was] no dispute that [plaintiff's] claims for libel and business disparagement [were] based on, related to, or asserted in response to the 'right to petition'" where plaintiff alleged that defendants "made defamatory statements about her in the lawsuit it filed seeking a declaratory judgment"); *see also, e.g., March v. Twin Cities Police Auth.*, 2014 WL 3725931, at *10 (N.D. Cal. July 25, 2014) ("A claim for relief filed in court is 'indisputably a statement or writing made before a judicial proceeding' and is, therefore, subject to the anti-SLAPP statute." (citing *Navellier v. Sletten*, 52 P.3d 703, 709 (Cal. 2002))).

B

Grammer contends that the TCPA also applies to Charalambopoulos' claims based on her statements to police and other law enforcement officials. She maintains that making a police report and speaking to law enforcement officials are communications in and pertaining to an official proceeding because they are communications "in an executive proceeding conducted before a public servant who was an employee of a governmental body." D. Br. 8.

The court has found no Texas case that addresses whether statements made to law enforcement when reporting a possible crime qualify under the TCPA as the reporting party's exercise of the right to petition. In a case in which this court's subject matter jurisdiction is

based on diversity of citizenship, it is *Erie*-bound to apply the law as would a Texas court. *See, e.g., Allstate Ins. Co. v. Shelby*, 672 F. Supp. 956, 958 (N.D. Tex. 1987) (Fitzwater, J.).[6] When, as here, the law that a Texas court would apply is Texas law, and there is no binding decision of the Supreme Court of Texas on the question, this court must make an "*Erie*-guess," i.e., a prediction of how the Supreme Court of Texas would resolve the issue if presented with the same case. *See, e.g ., Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009)). In doing so, this court is not required to be prescient. Instead, "'[w]hen confronted with an unsettled issue of state law, a federal court sitting in diversity must make its best effort to predict how the state courts would decide the issue.'" *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 750 (5th Cir. 1995) (quoting *DeWeerth v. Baldinger*, 38 F.3d 1266, 1273 (2d Cir. 1994)). *Erie* and its progeny require no more of a federal court than that it conscientiously satisfy its duty to predict how the state court would decide a question. *Id.*

The TCPA defines the right to petition broadly. *See supra* note 4. The statutory definition includes "a communication in or pertaining to . . . a judicial proceeding [or] an official proceeding, other than a judicial proceeding, to administer the law," "a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official

---

[6]The court does not suggest that it is bound by various provisions of the TCPA that are procedural. *See infra* § XIV (holding that TCPA procedural requirement of a hearing is not binding on this court).

proceeding," or "any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state."  § 27.001(4)(A)(i) & (ii), (B), & (E).  As noted above, the TCPA defines "official proceeding" to mean "any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant."  § 27.001(8).  California courts interpreting similar language in the California anti-SLAPP statute[7] have held that "[s]tatements made to police in response to a perceived wrongdoing for the purpose of garnering police assistance are within the scope of the anti-SLAPP statute."  *Van Der Valk v. AU Energy, LLC*, 2014 WL 6632930, at *4 (Cal. Ct. App. Nov. 24, 2014) (citing cases); *Comstock v. Aber*, 151 Cal. Rptr. 3d 589, 598 (Cal. Ct. App. 2012) ("The law is that communications to the police are within SLAPP."); *Siam v. Kizilbash*, 31 Cal. Rptr. 3d 368,

---

[7]Cal. Civ. Proc. Code § 425.16(e) provides:

> As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

374 (Cal. Ct. App. 2005) ("Communications that are preparatory to or in anticipation of commencing official proceedings come within the protection of the anti-SLAPP statute."). These courts reason that these types of communications to the police seek "official investigations into perceived wrongdoing, which might culminate in criminal prosecution or other official proceedings." *Salma v. Capon*, 74 Cal. Rptr. 3d 873, 882 (Cal. Ct. App. 2008). Courts in other states have reached similar conclusions. *See, e.g., Hindu Temple & Cmty. Ctr. of High Desert, Inc. v. Raghunathan*, 714 S.E.2d 628, 632 (Ga. App. 2011) (holding that statements to police by individuals alleging that religious institution and its founder had defrauded them were protected by anti-SLAPP statute); *Benoit v. Frederickson*, 908 N.E.2d 714, 718 (Mass. 2009) ("The reporting of a rape to police, which initiates the filing of a criminal complaint, is a petitioning activity encompassed within the protection afforded by [Massachusetts' anti-SLAPP statute]."). Although courts interpreting more narrowly drawn anti-SLAPP statutes may have reached a different conclusion,[8] this court makes an *Erie*-guess that the Supreme Court of Texas would rule consistently with the courts of several other states construing similar anti-SLAPP statutes and hold that statements made to law enforcement when reporting a possible crime qualify under the TCPA as the reporting party's exercise of the right to petition.

---

[8]*See, e.g., Varela v. Perez*, 2009 WL 4438738, at *1 (D. Ariz. Nov. 30, 2009) (refusing to award attorney's fees under Arizona anti-SLAPP statute after concluding that "report of criminal activity to the police is not a 'petition to the government' as that term is used in" the statute, which defines the right of petition to include a statement "[m]ade in connection with an issue that is under consideration or review by a legislative or executive body or any other governmental proceeding.").

- 15 -

Moreover, filing a police report is often the first step in initiating an official criminal proceeding against the alleged offender, and it therefore logically constitutes a communication pertaining to an official proceeding to administer the law. Communications made in connection with reporting a crime likely implicate the right to petition the government for the redress of grievances. *See, e.g., Tilley v. Peaster Indep. Sch. Dist.*, 2013 WL 1890376, at *4 (N.D. Tex. May 7, 2013) (Means, J.) ("'[F]iling a police report may implicate speech that is protected under the Petition Clause of the First Amendment.'" (quoting *Mazzeo v. Gibbons*, 649 F.Supp.2d 1182, 1194 (D. Nev. 2009))). As such, they would also fall within § 27.001(4)(E), which includes "any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state." *See, e.g., Raghunathan*, 714 S.E.2d at 632 ("Suffice it to say, [statements to police or statements made in furtherance of an ongoing investigation regarding alleged criminal activity] [are] 'in furtherance of the right . . . to petition government for a redress of grievances.'" (citation omitted)); *Benoit*, 908 N.E.2d at 719 (holding that defendants' "involvement in their minor daughter's reporting of crimes to the police plainly comes within the scope of petitioning."). The express purpose of the TCPA "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." § 27.002. Consistent with this purpose, the TCPA provides that it "shall be construed liberally to effectuate its purpose and intent fully." § 27.011(b).

Accordingly, Grammer has shown that, to the extent Charalambopoulos' claims are based on Grammer's reports to the police—either in connection with the Alleged Assault or Alleged Stalking—these claims are based on, relate to, or are in response to Grammer's exercise of the right to petition.

C

Charalambopoulos opposes the motion to dismiss on the grounds that Grammer presented false testimony that is not protected speech in any type of proceeding, and that she can point to no Texas authority that permits her to file a false sworn statement with the police or a court. This reasoning is misplaced.

The TCPA does not define the "[e]xercise of the right to petition" in terms of whether the petitioner is communicating *truthfully*. Instead, the definition turns on whether a communication is in or pertaining to a particular type of proceeding or meeting, is made for a particular purpose, is reasonably likely to have a particular effect, or falls within the protection of the Constitution of the United States or of the State of Texas. *See Cruz v. Van Sickle*, ___ S.W.3d___, 2014 WL 6850971, at *5-6 (Tex. App. Dec. 3, 2014, no pet.) (rejecting contention that false and libelous statement cannot be matter of public concern under TCPA); *Lipsky*, 411 S.W.3d at 543 ("The statutory definitions for the exercise of the right of free speech and the exercise of the right to petition do not include language requiring us to determine the truth or falsity of communications when deciding whether a movant for dismissal has met its preliminary preponderance of the evidence burden under section 27.005(b)."). Instead, Charalambopoulos' assertion that Grammer's statements are

actionable because they are false and defamatory is to be evaluated when applying § 27.005(c). When a moving party satisfies her burden of showing her right to TCPA coverage under § 27.005(b), the nonmoving party can avoid dismissal by establishing by clear and specific evidence a prima facie case for each essential element of his claim, § 27.005(c). Charalambopoulos' argument regarding the alleged falsity of Grammer's allegations against him therefore relates to the second, not the first, step of the sequential analytical process. *See Kinney v. BCG Attorney Search, Inc.*, 2014 WL 1432012 at *5 (Tex. App. 2014, pet. filed) (mem. op.) ("Whether Kinney's statements were defamatory and thus actionable is reviewable in the second part of [the] court's analysis, under section 27.005(c), which precludes dismissal if the plaintiff establishes by clear and specific evidence a prima facie case for each essential element of its claim."); *see also Schimmel v. McGregor*, 438 S.W.3d 847, 859 (Tex. App. 2014, pet. filed) (rejecting argument that plaintiff's claims did not relate to exercise of constitutionally protected rights because they were "'based upon the independent torts of fraud, misrepresentations and illegal boycott,' which do not implicate constitutional protections," and holding that the argument was "relevant to the *second* step of the inquiry—whether the [plaintiffs] [had] demonstrated a prima facie case for relief on every essential element of their tortious interference claim."); *Lipsky*, 411 S.W.3d at 543 (holding that the TCPA "dictates that we should review evidence concerning whether [the defendants'] statements were defamatory and thus actionable in the second part of our review, in which [the plaintiff] has the burden of establishing 'by clear and specific evidence a prima facie case for each essential element of the claim in question.'" (citations omitted)).

The court therefore rejects as premature at step one Charalambopoulos' reliance on the alleged falsity of Grammer's sworn statements to the police or a court.

D

Grammer next argues that Charalambopoulos' "other allegations of actionable conduct," including those based on her alleged statements to third parties, such as doctors, media outlets, and on social media, "are all based on, relate to, and [are] in response to Grammer['s] either making a police report or filing the Request for Restraining Order." D. Br. 8. To the extent Grammer intends to argue that Charalambopoulos' claims based on these statements are based on, relate to, or are in response to the exercise of her right to petition, the court holds that the TCPA applies only to the extent the claims are based on communications that Grammer made to the media regarding her Request for Restraining Order, communications regarding a report filed with the Los Angeles County Sheriff's Department in connection with the Alleged Stalking, or communications regarding any other judicial or official proceeding.

The court has located one Texas court decision—*KBMT Operating Co. v. Toledo*, 434 S.W.3d 276, 282 (Tex. App. 2014, pet. filed)—that holds that statements in the media about an "official proceeding" implicate the right to petition under the TCPA. In *KBMT* a physician sued several media defendants alleging they had defamed her when reporting that the Texas Medical Board ("TMB") had disciplined her. *Id.* at 280. The court concluded that the TCPA applied to the physician's defamation claim because it related to the media defendants' right to petition. *See id.* at 282-83 (holding that because broadcasts were

communications pertaining to proceeding before a department or subdivision of state government, they constituted exercise of right to petition). To the extent Charalambopoulos bases his claims on statements Grammer made regarding the Request for Restraining Order, statements regarding a report filed with the Los Angeles County Sheriff's Department in connection with the Alleged Stalking, or statements pertaining to any other judicial or official proceeding, the court concludes that they fall within the scope of § 27.005(b). *See id.*

To the extent, however, that Charalambopoulos' claims are based on Grammer's statements to third parties that do not specifically refer to the Request for Restraining Order, a report filed with the Los Angeles County Sheriff's Department in connection with the Alleged Stalking, or any other judicial or official proceeding, Grammer has not shown that the claims are based on, relate to, or are in response to Grammer's exercise of the right to petition and fall within § 27.005(b). For example, Charalambopoulos alleges that Grammer tweeted to her more than 198,000 followers: "Info will come out today that is jaw dropping. And women can't be silenced after being physically abused. Yes, it was horrible what happened to me two days out of the hospital. I was in fear for my life." Am. Pet. ¶ 15 (internal quotation marks omitted). Although it is reasonable to infer that these statements refer to the Alleged Assault, they are not communications in or pertaining to any proceeding or other context that falls within the definition of the exercise of the right to petition. *See* § 27.001(4)(A)-(E). In *KBMT* the statements detailed the TMB's administrative findings and the punishment imposed. In this case, Grammer has only established that the "tweets" referred to "Info [that] will come out today." These communications do not state that she has

filed a Request for Restraining Order, report on the status or outcome of her Request for Restraining Order, or state that a criminal investigation is ongoing.

Similarly, Grammer's statement on *The Dr. Oz Show* that "I was physically abused and assaulted by this person," Am. Pet. ¶ 16, does not mention the criminal proceedings or the Request for Restraining Order. Accordingly, Grammer has not shown that the communication on *The Dr. Oz Show* was made in or pertained to a covered proceeding.

Nor has Grammer shown that her statements to a Hotel ZaZa employee and to her doctors at M.D. Anderson are communications within the TCPA's scope. Grammer has not established that these are public communications (statements to one's physician are certainly not public), and "private communications are not protected by the statute." *Rivers v. Johnson Custodial Home, Inc.*, 2014 WL 4199540, at *1 (W.D. Tex. Aug. 22, 2014); *see Whisenhunt v. Lippincott*, 416 S.W.3d 689, 700 (Tex. App. 2013, pet. filed) ("The TCPA does not apply to speech that is only privately communicated."). And these communications were made before Grammer filed the Request for Restraining Order and before any criminal charges were filed. She has also shown that they pertain to the fact of the Alleged Assault, not to any judicial or official proceeding related to the Alleged Assault. The court therefore holds that Grammer has not shown that her statements to a Hotel ZaZa employee and to her doctors at M.D. Anderson are covered under § 27.005(b).

V

The court considers next whether Grammer has shown that Charalambopoulos' legal action is based on, relates to, or is in response to her exercise of the right to free speech.

A

The TCPA applies to legal actions based on a party's exercise of the right of free speech. As noted above, the exercise of this right "means a communication made in connection with a matter of public concern." § 27.001(3). A "'[m]atter of public concern' includes an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." § 27.001(7).

Grammer contends that her statements to third parties, such as doctors, media outlets, and on social media, implicate the exercise of her right of free speech under the TCPA because they are "made in connection with a matter of public concern," in that "the statements, which all relate to the reporting of a possible crime, are related to Grammer's and the public's health, safety, and well-being." D. Br. 9 (quoting § 27.001(3)).

In her brief, Grammer relies on *Williams v. Cordillera Communications, Inc.*, 2014 WL 2611746 (S.D. Tex. June 11, 2014), to argue that the TCPA applies because her statements "are related to [her] and the public's health, safety, and well-being." D. Br. 9. But *Williams* is factually distinguishable. There the defendant reported that the plaintiff, a public school teacher accused of criminal sexual acts involving young females (including some of his students), had been permitted to resign under circumstances that shielded him

from allegations of wrongdoing, after which he had been hired by another school district, where he was accused of similar wrongdoing. *Williams*, 2014 WL 2611746, at *4. The court held that "it is a matter of public concern that a person who has a history of being terminated from his teaching job because of allegations of wrongdoing can continue to be hired in positions in which the safety of students is entrusted to him." *Id.* It also concluded that "the matters on which [the defendant] reported are matters involving health and safety, community well-being and—with respect to public educational institutions, mandatory primary education, and certification of teachers—the government." *Id.* In the present case, however, the only victim of an alleged crime is Grammer, and she has not shown that she communicated that Charalambopoulos posed a risk to the community.[9] Nor are there any facts, as in *Williams*, that suggest wrongdoing on the part of the government in handling Grammer's allegations against Charalambopoulos, repeated criminal acts, or that the public's health, safety, or general community well-being had in any way been affected. The evidence adduced thus far reflects a dispute between Grammer and Charalambopoulos that does not extend beyond their private relationship. Grammer has not shown that her statements to third parties were made in connection with an issue related to the public's health, safety, or well-being.

Grammer argues that her statements to the police and her statement on Twitter that

---

[9]Grammer's statement on *The Dr. Oz Show* that "I was physically abused and assaulted by this person," Am. Pet. ¶ 16, did not suggest of itself that Charalambopoulos was a threat to others.

"women can't be silenced after being physically abused," "relate to the reporting of a domestic violence crime and warn women about the hazards of being stuck in an abusive relationship and the need to take action to defend against such relationships." D. Reply 4 n.3. The court has already concluded that Charalambopoulos' claims based on Grammer's statements to the police fall within the purview of § 27.005(b) because she has shown that she was exercising her right to petition. But Grammer has failed to show that § 27.005(b) applies to her "tweet" that "women can't be silenced after being physically abused." In *Pickens v. Cordia*, 433 S.W.3d 179 (Tex. App. 2014, no pet.), a Texas court of appeals considered whether statements posted on the defendant's blog that accused his father of subjecting his children to "child abuse" were in connection with a matter of public concern, such that the plaintiffs' defamation and related claims based on the defendant's blog posts were subject to the TCPA. *Id.* at 182. The court held that they were not:

> While we agree that issues of "addiction, parental abuse, fathers' responsibilities to their children and family dynamics" generally may be matters of public concern, [the defendant's] blog is not a general purveyor of information on those subjects. . . . We cannot conclude that statements of private life, such as those recounted in [defendant's] blog, implicate the broader health and safety concerns or community well-being concerns contemplated by [the TCPA].

*Id.*

Similarly, although at a general level the public is concerned about preventing domestic violence and ensuring that crimes are prosecuted, Grammer has failed to show that the "tweets" in question—that "Info will come out today that is jaw dropping. And women

- 24 -

can't be silenced after being physically abused[,]" "Yes, it was horrible what happened to me two days out of the hospital[,]" and "I was in fear for my life"—are communications about an issue related to public health, safety, or well-being.  Considered in context, Grammer's statements are focused primarily on herself and the Alleged Assault, which, as explained below, is a matter of private concern.[10]

B

The TCPA also defines a matter of public concern to include an issue related to a public official or public figure.  § 27.001(7).  Grammer contends that her statements to third parties, such as doctors, media outlets, and on social media, involve her exercise of the right of free speech under the TCPA because they were made about Charalambopoulos, a limited-purpose public figure.  In other words, Grammer maintains that she exercised her right of free speech when she communicated about Charalambopoulos because she was communicating about an issue related to a public figure.

---

[10]Charalambopoulos' evidence includes articles containing statements attributed to Grammer that might be considered communications related to issues of health, safety, or community well-being.  *See, e.g.,* P. App. 26 (hollywoodlife.com article quoting Grammer as stating, "I want to encourage women everywhere to speak up for themselves when it comes to domestic violence and abuse. . . . Domestic violence is an epidemic and there are too many silent women suffering.  They are afraid to speak up.  I have to speak up for my own recovery.  I want to empower other women. . . .  I want women to know there is NO excuse to hit a wom[a]n.").  Other than at a very general level, however, Grammer does not argue that these statements are protected by the TCPA or that she even made them.  Accordingly, she has not met her burden under the TCPA with respect to any such statements.

1

The TCPA does not define "public figure."  Accordingly, the court looks to the technical meaning that the term "public figure" has acquired in First Amendment cases. *Rauhauser v. McGibney*, ___ S.W.3d ___, 2014 WL 6996819, at *6 (Tex. App. Dec. 11, 2014, no pet. h.) (per curiam) (citing Tex. Gov't Code Ann. § 311.011(b) (West 2013)).

Under Texas law, there are two classes of "public figures": (1) general-purpose public figures, who are individuals who "'achieve such pervasive fame or notoriety that [they] become[] public figure[s] for all purposes and in all contexts'"; and (2) limited-purpose public figures, who are persons who "'thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved . . . inviting attention and comment'"; who voluntarily "'inject[] [themselves] or [are] drawn into a particular public controversy . . . assum[ing] special prominence in the resolution of public questions'"; and who "'thrust[ ] [themselves] into the vortex of [a] public issue . . . [or] engag[e] the public's attention in an attempt to influence its outcome.'" *Klentzman v. Brady*, 312 S.W.3d 886, 904-05 (Tex. App. 2009, no pet.) (some alterations in original) (quoting *Gertz*, 418 U.S. at 345, 351, 352).  To determine whether a person is a limited-purpose public figure, Texas courts apply a three-part test: (1) the controversy at issue must be public both in the sense that people are discussing it and in the sense that people other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff must have more than a trivial or tangential role in the controversy; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy. *WFAA-TV, Inc. v. McLemore*,

978 S.W.2d 568, 571 (Tex. 1998).[11] "Public figure status is a question of law for the court." *Neely v. Wilson*, 418 S.W.3d 52, 70 (Tex. 2013) (citing *McLemore*, 978 S.W.2d at 571).

2

Grammer contends that all three parts of the test are satisfied: Charalambopoulos achieved public attention through his relationship of more than two years with Grammer that predated the incident at issue; the community is impacted because the public has exhibited interest in media stories about Charalambopoulos and Grammer and the events that transpired between them on October 16, 2013; and Charalambopoulos occupies a central role in the controversy as one of the two main individuals involved, and the alleged defamatory statements stem directly from his role in the controversy.

Charalambopoulos responds that "[Grammer] [dragged] [him] into the limelight of her false stories about an 'assault' and 'stalking'—[he] certainly did not voluntarily inject himself into any of them." P. Br. 9. He contends that there is no suggestion or evidence that

---

[11]In *McLemore* the Supreme Court of Texas "expressly reserved the question of whether an individual may meet the public controversy requirement against her will." *Neely v. Wilson*, 418 S.W.3d 52, 70-71 (Tex. 2013) (citing *McLemore*, 978 S.W.2d at 571-72). The court recently revisited this question in *Neely*, stating that the Supreme Court of the United States's "forecast [in *Gertz*] that it would be 'exceedingly rare' for a person to become a public figure involuntarily has proven true: neither the United States Supreme Court nor this Court has found circumstances in which a person involuntarily became a limited-purpose public figure." *Id.* at 71 (citation omitted). The *Neely* court declined to hold, on the facts presented, that "this is the exceedingly rare case in which a person has become a limited-purpose public figure against his will." *Id.*; *see also Klentzman*, 312 S.W.3d at 905-07 (media defendants did not establish son of chief deputy sheriff was limited-purpose public figure because they did not show he had "thrust himself" into any public controversy that might have arisen from his father's actions).

he promoted himself in any way related to Grammer; that her repeated discussion in the media of him and the alleged criminal conduct cannot make him a public figure; and that Grammer has not shown that he had more than a trivial or tangential role in the controversy because he did not actively seek publicity surrounding the controversy, as Texas law requires. *Id.* at 10.

3

Before turning to the three-part test, the court notes that Grammer has adduced no evidence supporting her assertion that Charalambopoulos is a limited-purpose public figure based on his relationship with her that predated the Alleged Assault.[12]  Grammer cites only the amended petition, which she contends establishes "that, at a minimum, Access Hollywood, Entertainment Tonight, Hollywood Gossip, TMZ, E-Online, Radar Online, and Dailymail.co.uk ran stories about [Charalambopoulos]."  D. Br. 10.  Charalambopoulos' allegations that various media outlets ran stories related to the Alleged Assault, Request for Restraining Order, and Alleged Stalking are insufficient to establish that he achieved public attention through his relationship with Grammer that predated the Alleged Assault.  *E.g., Rauhauser*, 2014 WL 6996819, at *6 (requiring defendant moving to dismiss under TCPA to establish by a preponderance of the evidence that plaintiff was a limited-purpose public

---

[12]It is doubtful that Grammer can rely on media coverage that began with the Alleged Assault to establish that Charalambopoulos is a limited-purpose public figure.  *See Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979) ("[T]hose charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure.").

figure with respect to the communications defendant made concerning the plaintiff). Accordingly, the court will consider only whether the media attention surrounding the Alleged Assault and related events is sufficient to establish that Charalambopoulos is a limited-purpose public figure with respect to the media's coverage of these events.

4

Under the three-part *McLemore* test, the court assesses first whether Grammer has shown that the controversy at issue was public both in the sense that people were discussing it and that people other than the immediate participants in the controversy were likely to feel the impact of its resolution. *McLemore*, 978 S.W.2d at 571.

> To determine whether a controversy indeed existed and, if so, to define its contours, the judge must examine whether persons actually were discussing some specific question. A general concern or interest will not suffice. The court can see if the press was covering the debate, reporting what people were saying and uncovering facts and theories to help the public formulate some judgment.

*Id*. at 572 (citation omitted). "Furthermore, a public controversy is more than simply a matter of interest to the public; it must be a dispute that has received public attention because the outcome affects the general public or some segment of it in an appreciable way." *Scripps Tex. Newspaper, LP v. Carter*, 2012 WL 5948955, at *2 (Tex. App. Nov. 21, 2012, no pet.) (citing *Einhorn v. LaChance*, 823 S.W.2d 405, 412 (Tex. App. 1992, writ dism'd w.o.j.)); *see also Time, Inc. v. Firestone*, 424 U.S. 448, 454 (1976) (holding that general controversy surrounding divorce was not public controversy for purposes of analyzing whether party was a limited-purpose public figure).

> It is not enough that a plaintiff is involved or associated with a matter of public or general interest, no matter how significant or sensational.   "A private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention" or is newsworthy.

*Klentzman*, 312 S.W.3d at 904 (internal citations omitted).   "Even engaging in criminal conduct does not make . . . a person a limited-purpose public figure."   *Id.* at 905 (citing *Wolston v. Reader's Digest Ass'n*, 443 U.S. 157, 168 (1979)).

Although the evidence shows that the Alleged Assault, the Request for Restraining Order, and the Alleged Stalking generated media coverage (primarily via celebrity media outlets) that may have been of interest to the public, Grammer has failed to show that people were discussing these matters or that people other than the immediate participants in the controversy were likely to feel the impact of its resolution.   So far as the record shows, members of the public who watched, read, and/or heard about coverage of the domestic dispute between Grammer and Charalambopoulos responded with little or no interest in how it turned out.   There is certainly no basis to find that the public was likely to feel the impact of the resolution of this dispute.   Grammer has therefore failed to show that the controversy in question was a matter of "public concern."   *See Time*, 424 U.S. at 450, 454-55 (holding in somewhat analogous context that wife of "scion of one of America's wealthier industrial families" was not limited-purpose public figure with respect to couple's divorce, and explaining that "[d]issolution of a marriage through judicial proceedings is not the sort of 'public controversy' referred to in *Gertz*, even though the marital difficulties of extremely

wealthy individuals may be of interest to some portion of the reading public."); *Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325, 1330 (5th Cir. 1993) (holding that "ordinarily [legal] disputes between two parties will be matters of private concern," and press release "not aimed at enlightening the general public" but "solely in the individual interest of the speaker and its specific business audience" did not make issue one of public concern); *Barbouti v. Hearst Corp.*, 927 S.W.2d 37, 48 (Tex. App. 1996, writ denied) ("The consequence of the Munden suit was a judgment between the parties that could have resulted in the award of damages.  Such a judgment would affect only the direct participants—the parties to the suit—and would not affect the public in any appreciable way.  The Munden suit was not a 'public controversy.'").[13]

Because Grammer has not satisfied the first element of the *McLemore* test, she has also failed to show that Charalambopoulos is a limited-purpose public figure.  *Barbouti*, 927 S.W.2d at 48.[14]  Absent this showing, she cannot establish that her statements to third parties,

_____

[13]Grammer relies on *New Times, Inc. v. Wamstad*, 106 S.W.3d 916 (Tex. App. 2003, pet. denied), to argue that, because the media were interested in discussing Charalambopoulos' interactions with Grammer, this is sufficient to meet the public figure standard.  This reliance is misplaced, however, because *Wamstad* is factually distinguishable.

[14]In her reply, Grammer contends that Charalambopoulos "affirmatively engaged the public and media by giving a nationally-broadcast interview about the assault incident to *Access Hollywood*."  Reply 4.  The mere fact that Charalambopoulos appeared on national TV to defend himself against Grammer's accusations, however, does not convert the dispute between Charalambopoulos and Grammer into one of public importance.  *See Time*, 424 U.S. at 454 n.3 ("Nor do we think the fact that respondent may have held a few press conferences during the divorce proceedings in an attempt to satisfy inquiring reporters converts her into a 'public figure.'  Such interviews should have had no effect upon the merits of the legal dispute between respondent and her husband or the outcome of that trial, and we do not think it can be assumed that any such purpose was intended.  Moreover, there is no indication that

such as doctors, media outlets, and on social media, involved her exercise of the right of free speech under the TCPA because they were made about Charalambopoulos.

## VI

In sum, the court concludes that Grammer has met her burden under § 27.005(b) to the extent that Charalambopoulos' claims are based on Grammer's statements made in the Request for Restraining Order, her statements made to the police or other law enforcement officials related to the Alleged Assault or the Alleged Stalking, or her statements made in the media pertaining to her Request for Restraining Order, the report filed with the Los Angeles County Sheriff's Department concerning the Alleged Stalking, or any other judicial or official proceeding.  To the extent Charalambopoulos' claims are based on Grammer's statements to third parties that do not pertain to any judicial or official proceeding—such as the tweets to her Twitter followers, her statements on *The Dr. Oz Show*, her statement to the Hotel ZaZa employee, and her statements to doctors at M.D. Anderson—Grammer has not met her burden under § 27.005(b). This means that the court need not reach the remaining steps of the sequential analysis to the extent that Charalambopoulos' claims for defamation and defamation per se are based on these types of statements.[15]

_____

she sought to use the press conferences as a vehicle by which to thrust herself to the forefront of some unrelated controversy in order to influence its resolution.").

[15]Charalambopoulos' malicious prosecution claim is not affected because it is based on different statements.  And his claims for negligence, gross negligence, fraud, and IIED are not impacted because, for the reasons the court explains below, they are not viable.

VII

Because Grammer has met her burden under § 27.005(b) as to some claims, the court must  proceed to step two and decide as to those claims whether Charalambopoulos has "establishe[d] by clear and specific evidence a prima facie case for each essential element of the claim in question."  § 27.005(c).

"The TCPA provides no guidance as to the quantum of proof necessary to constitute clear and specific evidence of a prima facie case for each essential element of a claim." *Better Bus. Bureau of Metro. Dall., Inc. v. BH DFW, Inc*., 402 S.W.3d 299, 309 (Tex. App. 2013, pet. denied).  "Prima facie evidence is evidence that, until its effect is overcome by other evidence, will suffice as proof of a fact in issue.  In other words, a prima facie case is one that will entitle a party to recover if no evidence to the contrary is offered by the opposite party." *Farias v. Garza*, 426 S.W.3d 808, 814 (Tex. App. 2014, pet. filed) (citations and internal quotation marks omitted) (addressing TCPA prima facie case standard).  Generally, a "prima facie standard requires only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (citations and internal quotation marks omitted).

At least some Texas courts of appeals have held, however, that because the TCPA requires that the party bringing the action establish a prima facie case "by clear and specific evidence," the party must satisfy "an elevated evidentiary standard." *See, e.g., Cruz*, ___ S.W.3d at ___, 2014 WL 6850971, at *6 n.15 ("We have previously stated the purposeful inclusion of the 'clear and specific evidence' requirement suggests an elevated evidentiary

standard." (citing *Shipp v. Malouf*, 439 S.W.3d 432, 439 (Tex. App. 2014, pet. filed); *Young v. Krantz*, 434 S.W.3d 335, 342-43 (Tex. App. 2014, no. pet.))); *accord Sierra Club v. Andrews County*, 418 S.W.3d 711, 715-16 (Tex. App. 2013, pet. filed) ("However, the purposeful inclusion of a 'clear and specific evidence' requirement indicates that the non-movant must satisfy an elevated evidentiary standard showing 'clear and specific' evidence rather than just 'some' evidence to avoid dismissal under Section 27.005(c)." (quoting *Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 726 (Tex. App. 2013, pet. denied))).   In *Rehak* the court of appeals recognized the accepted understanding of a prima facie case: evidence that, until its effect is overcome by other evidence, will suffice as proof of a fact in issue and will entitle a party to recover if no evidence to the contrary is offered by the opposite party.  *Rehak*, 404 S.W.3d at 726.  Quoting *Lipsky*, it also noted that, "[i]n cases unrelated to motions to dismiss under [the TCPA], Texas courts have defined prima facie evidence as the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* (quoting *Lipsky*, 411 S.W.3d at 539) (internal quotation marks omitted)).   But the court also noted that "'[c]lear and specific evidence' has been described as evidence that is 'unaided by presumptions, inferences, or intendments.'"  *Id.* (quoting *McDonald v. Clemens*, 464 S.W.2d 450, 456 (Tex. Civ. App. 1971, no writ)).  Drawing on these concepts, *Rehak* concluded that, on appeal from an order under § 27.005(c), it would "determine *de novo* whether the record contains a minimum quantum of clear and specific evidence that, unaided by inferences, would establish each essential element of the claim in question if no contrary evidence is offered." *Id.* at 727.  Other courts

of appeals appear to have applied a similar standard. *KBMT*, 434 S.W.3d at 282 (quoting *Rehak*, 404 S.W.3d at 727); *Sierra Club*, 418 S.W.3d at 716 (quoting *Rehak*, 404 S.W.3d at 727). Still others appear to have relied instead on the dictionary definitions of the terms "clear" and "specific." *E.g., Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 355 (Tex. App. 2013, pet. denied).

The Supreme Court of Texas has not addressed what quantum of proof is necessary to establish by clear and specific evidence a prima facie case for each essential element of a claim. This court must therefore make an *Erie*-guess about what standard it would impose. When making an *Erie*-guess, this court is bound by an intermediate state appellate court decision unless "convinced by other persuasive data that the highest court of the state would decide otherwise." *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998) (footnote and internal quotation marks omitted). Having considered the law that has developed so far in the courts of appeals, the court predicts that the Supreme Court of Texas would hold that, to satisfy the standard imposed in § 27.005(c), the party bringing the legal action must itself produce, or must cite elsewhere in the record, a minimum quantum of clear and specific evidence that, unaided by inferences, would establish each essential element of the claim in question if no contrary evidence were offered. Essentially, it appears that the principal difference between a prima facie case established by clear and specific evidence and a mine-run prima facie case is that a prima facie case established by clear and specific evidence must be made without the benefit of rational inferences drawn from the evidence presented.

VIII

The court considers together Charalambopoulos' claims for defamation and defamation per se.

A

To prevail on a defamation claim[16] under Texas law, a plaintiff must prove that the defendant "(1) published a statement; (2) that defamed the plaintiff; (3) while either acting with actual malice (if the plaintiff was a public official or public figure) or negligence (if the plaintiff was a private individual) regarding the truth of the statement." *Neely*, 418 S.W.3d at 61(citing *McLemore*, 978 S.W.2d at 571). A statement is defamatory if it "tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." *Id.* at 60 (citation omitted). "Defamatory statements are 'published' if they are communicated orally, in writing, or in print to some third person capable of understanding their defamatory import and in such a way that the third person did so understand." *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 496 (Tex. App. 2003, no pet.) (citing *Ramos v. Henry C. Beck Co.*, 711 S.W.2d 331, 335 (Tex. App. 1986, no writ)). To establish actual malice, a plaintiff must prove the defendant made a statement with "knowledge of, or reckless disregard for, [its] falsity." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434

---

[16]"The tort of defamation includes libel and slander. Libel occurs when the defamatory statements are in writing." *Neely*, 418 S.W.3d at 60 (citing Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West 2011)). "Slander occurs when the statements are spoken." *Id.* (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17 (1990)).

S.W.3d 142, 157 (Tex. 2014); *Freedom Newspapers of Tex. v. Cantu*, 168 S.W.3d 847, 853 (Tex. 2005).

Defamation per se involves a statement that is so obviously hurtful to a plaintiff's reputation that the jury may presume general damages, including for loss of reputation and mental anguish. *Hancock v. Variyam*, 400 S.W.3d 59, 63 (Tex. 2013). "[A] statement is defamatory per se only if it falls within one of the following categories: (1) imputation of a crime; (2) imputation of a loathsome disease; (3) injury to a person's office, business, profession, or calling; or (4) imputation of sexual misconduct." *Memon v. Shaikh*, 401 S.W.3d 407, 421 (Tex. App. 2013, no pet.); *see also Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 581 (Tex. App. 2007, pet. denied) (same).

B

In his amended petition, Charalambopoulos alleges that Grammer published defamatory statements to Officer Vo, to the media (i.e., multiple online websites), and in the Request for Restraining Order.[17]  In support of his claim for defamation per se, he also alleges that Grammer accused him of violating restraining orders issued by California and Texas courts.

Grammer contends that Charalambopoulos cannot meet his burden of establishing by

---

[17]Charalambopoulos also alleges that Grammer published defamatory statements to a Hotel ZaZa employee, doctors at M.D. Anderson, her 198,000 Twitter followers, and on *The Dr. Oz Show*.  But because the court concludes above that Grammer has failed to show that Charalambopoulos' legal action based on this conduct falls within the scope of § 27.005(b), he is not obligated to satisfy the prima facie standard of § 27.005(c) concerning these grounds for his defamation claims.

clear and specific evidence that the statements related to the Alleged Assault were false or that Grammer acted with actual malice[18] in publishing them.  She also maintains that he has not established by clear and specific evidence that some of the statements, including those she made to the Hotel ZaZa employee or the M.D. Anderson doctors and staff,[19] were defamatory.

Charalambopoulos responds that Grammer accused him of committing the crime of assault, and then published and republished the accusations through various media sources across the United States and in Great Britain; that he has submitted clear and specific evidence that Grammer falsely accused him of assault and stalking; and that Grammer's own evidence indicates that she negligently reported to police that he was stalking her in violation of the California Restraining Order, without even checking the photos from her surveillance system.

C

1

The court considers first Grammer's statements to Officer Vo and in the Request for Restraining Order regarding the Alleged Assault.  Under Texas law, statements accusing a person of committing a crime are defamatory per se.  *See, e.g., Leyendecker & Assocs. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984) ("A false statement which charges a person with

---

[18]Grammer maintains that Charalambopoulos is required to establish that she acted with actual malice because he is a limited-purpose public figure.

[19]As the court explains *supra* at note 17, Charalambopoulos is not obligated to satisfy the prima facie standard of § 27.005(c) concerning these grounds for his defamation claims.

the commission of a crime is libelous per se."); *Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 329 (Tex. App. 2011, no pet.) ("A statement is defamatory per se if it . . . is a false statement that accuses [a person] of committing a crime."). It is undisputed that, in the Request for Restraining Order[20] and in her statement to Officer Vo,[21] Grammer accused Charalambopoulos of committing the crime of assault.

Charalambopoulos has established by clear and specific evidence a prima facie case that the statements Grammer made in the Request for Restraining Order and to Officer Vo were untrue. In his affidavit, he denies that he physically assaulted Grammer in any of the ways she described in her report to Officer Vo; he points to evidence that, despite the physical violence that Grammer alleges occurred, Officer Vo observed only "minor injuries" to Grammer's right arm, D. App. 60; he cites evidence that Grammer's doctors at M.D. Anderson noted after her October 16, 2013 examination that she did not have bruises to her face; and he offers a contrary version of what transpired between the two of them.[22] The

---

[20]Although Charalambopoulos does not include the Request for Restraining Order in his response appendix, he attached this document to his state-court original petition. Grammer does not dispute that this document is "before the Court for purposes of the TCPA motion." D. Reply. 8.

[21]Charalambopoulos also offers evidence that Grammer accused him of assault in statements made to HPD Officer B.R. Massie ("Officer Massie") on October 29, 2013 and November 18, 2013. Because Charalambopoulos does not base his defamation claims on the statements allegedly made to Officer Massie, the court will not consider them in deciding Grammer's motion to dismiss.

[22]Grammer moves to strike parts of Charalambopoulos' affidavit on the basis that they contain improper legal conclusions, legal argument based on speculation, hearsay, and are not based on personal knowledge. In reaching its decision, the court has relied only on evidence that satisfies the standard imposed by § 27.005(c). Accordingly, the court denies

court also concludes that Charalambopoulos has established by clear and specific evidence a prima facie case that Grammer knew these statements were untrue and therefore acted at least with negligence, if not with actual malice, regarding the truth of the statements.[23] Charalambopoulos has met his burden under § 27.005(c) with respect to his defamation claim based on Grammer's statements regarding the Alleged Assault in the Request for Restraining Order and to Officer Vo.

2

Regarding statements in the media about the Alleged Stalking,[24] Charalambopoulos has failed to establish by clear and specific evidence a prima facie case for each essential element of his defamation claims because he has not made the required showing that Grammer published any statement regarding the Alleged Stalking to a third party. Publishing a statement is the first essential element of a defamation claim (including defamation per se).

Charalambopoulos relies on three Internet articles detailing the Alleged Stalking, but he has not adduced any evidence that any of their contents came from Grammer or an agent of Grammer, as opposed to an unnamed "law enforcement source." P. App. 136, 139. To the extent Charalambopoulos relies for his defamation per se claim on proof that Grammer

_____

Grammer's motion to strike.

[23]Because the court has concluded above that Charalambopoulos is not a limited-purpose public figure, he is only required to establish by clear and specific evidence a prima facie case that Grammer acted with negligence.

[24]The court assumes that Charalambopoulos has adequately pleaded this as a basis for his defamation claim. *See* Am. Pet. ¶ 23 (alleging generally that Grammer published false statements to "[m]ultiple online sites").

accused him of violating restraining orders issued by California and Texas courts, this evidence is insufficient for the same reason. Charalambopoulos cites a letter from Grammer's attorney stating that "the Los Angeles Sheriff's Department was contacted and a report was made that we believed Mr. Charalambopoulos was attempting to gain entrance to [Grammer's] residence in violation of his restraining order." *Id.* at 148. But this statement does not identify who contacted the Los Angeles County Sheriff's Department or what was said. It is not clear and specific evidence that Grammer published a defamatory statement regarding the Alleged Stalking. Accordingly, Charalambopoulos has not met his burden under § 27.005(c) with respect to his defamation claim based on statements to the Los Angeles County Sheriff's Department or to the media regarding the Alleged Stalking.

Regarding the Alleged Assault, Charalambopoulos contends that Grammer "published and republished her accusations throughout various media sources across the nation (and even into Great Britain)." P. Br. 24. He attaches to his affidavit four articles about the Alleged Assault and Request for Restraining Order. To the extent Charalambopoulos bases his defamation claim on statements in these articles pertaining to the allegations in Grammer's Request for Restraining Order, Charalambopoulos has failed to establish by clear and specific evidence that Grammer published the statements contained in the attached articles. Charalambopoulos speculates that "Grammer, her agents and/or representatives published the statement that I assaulted her to . . . [m]ultiple online internet news sites," P. App. 16, but he fails to introduce evidence (much less clear and specific evidence) that Grammer published the contents of her Request for Restraining Order to anyone involved

in preparing or publishing the four articles.  Moreover, although under Texas law a party who "reasonably foresee[s] that [her] defamatory statements will be repeated to third parties may be held responsible for the republications," *Stephan v. Baylor Medical Center at Garland*, 20 S.W.3d 880, 890 (Tex. App. 2000 no pet.), Charalambopoulos has failed to offer the necessary proof to establish by clear and specific evidence that Grammer should have reasonably foreseen that, in making the statements in the Request for Restraining Order, various online news websites would republish them.  Although it may seem reasonable to draw this inference given the media environment in which Grammer apparently operated, the court has predicted above that the clear and specific evidence standard of § 27.005(c) requires a prima facie showing based on evidence that is unaided by inferences.

Accordingly, the court concludes that Charalambopoulos has failed to meet his burden under § 27.005(c) of establishing by clear and specific evidence a prima facie case of the essential elements of his defamation claims based on statements to the media.

D

Although Charalambopoulos has failed in certain respects to meet his burden under § 27.005(c) as to his claims for defamation and defamation per se, before dismissing these grounds for his claims, the court will consider whether it should allow him to conduct "specified and limited discovery relevant to the motion," which § 27.006(b) permits "on a showing of good cause."

1

Charalambopoulos moves for discovery, contending that it would be fundamentally unfair to summarily dismiss his lawsuit without giving him the opportunity to conduct the specified and limited discovery that § 27.006(b) allows. He requests that, if the court is inclined to hold that the TCPA applies to any or all of his claims, he be permitted to conduct such discovery for purposes of opposing Grammer's motion to dismiss. Grammer opposes the discovery request on the grounds that there is no good cause to disregard the TCPA's automatic stay of discovery and that none of the voluminous discovery Charalambopoulos seeks is required for him to respond to the motion to dismiss.

2

Section § 27.006(b) permits the court to allow "specified and limited discovery relevant to the motion [to dismiss]." To the extent Charalambopoulos seeks discovery related to a claim that the TCPA does not preclude him from prosecuting against Grammer, or to a covered claim that the court is not dismissing because he has met the § 27.005(c) standard, his motion for discovery is denied as moot. But to the extent Charalambopoulos requests specified and limited discovery that would enable him to satisfy the § 27.005(c) standard as to the remaining grounds for his defamation claims—i.e., to the extent they are based on Grammer's allegedly making defamatory statements to the Los Angeles County Sheriff's Department regarding the Alleged Stalking, or making defamatory statements to the media pertaining to the Request for Restraining Order, or making defamatory statements to the media pertaining to the report of the Alleged Stalking to the Los Angeles County Sheriff's

Department—the court finds good cause to allow this discovery.   In his motion, Charalambopoulos requests, *inter alia*, that

> Howard Bragman (Defendant's publicist); Howard Bragman publicist's company (Fifteen Minutes) and Scott MacLean [(Grammar's personal assistant),] should be ordered to produce any e-mails, text messages, and/or correspondence between them and any internet news organization related to the October 16, 2013 assault or the April 2014 "stalking" allegations[, and that] Plaintiff should be allowed to take the depositions of the individuals named above, concerning these documents, the October 16, 2013 alleged assault and the April 2014 stalking incident including Defendant Camille Grammer.

P. Mot. to Conduct Discovery Br. 7.   Because Charalambopoulos seeks discovery of evidence that is effectively within the exclusive control of Grammer and/or her agents, and this evidence may enable him to establish by clear and specific evidence a prima facie case as to the remaining grounds for his defamation claims, the court grants in part his motion for discovery under § 27.006(b).

The court will permit Charalambopoulos to conduct specified and limited discovery from Howard Bragman (Grammer's publicist), Fifteen Minutes (Howard Bragman's company), Scott MacLean (Grammer's personal assistant), and Grammer for the purpose of enabling Charalambopoulos to show (if he can) that Grammer and/or her agents published defamatory statements by making defamatory statements to the Los Angeles County Sheriff's Department regarding the Alleged Stalking, or by making defamatory statements to the media pertaining to the Request for Restraining Order, or by making defamatory statements to the media pertaining to the report of the Alleged Stalking to the Los Angeles County

Sheriff's Department.  He may conduct this discovery by any method available under the Federal Rules of Civil Procedure, provided that, unless the parties otherwise agree and the witness concurs, a deposition may only be taken where the witness resides, is employed, or regularly conducts business in person.  All such discovery must be conducted or served so that depositions are completed, and responses to other discovery requests are received by Charalambopoulos, no later than 60 days after this memorandum opinion and order is filed.

No later than 90 days after this memorandum opinion and order is filed, Charalambopoulos may file a supplemental response to Grammer's motion to dismiss in which he attempts to satisfy the § 27.005(c) standard concerning his claims for defamation and defamation per se to the extent they are based on Grammer's allegedly making defamatory statements to the Los Angeles County Sheriff's Department regarding the Alleged Stalking, or making defamatory statements to the media pertaining to the Request for Restraining Order, or making defamatory statements to the media pertaining to the report of the Alleged Stalking to the Los Angeles County Sheriff's Department.  If he does not file a supplemental response, the court will adhere to the grounds for dismissal set out in this memorandum opinion and order.  If he does, Grammer may respond within the time prescribed by the local civil rules or at a later time approved by the court.

E

In sum, as required by § 27.005(c), Charalambopoulos has established by clear and specific evidence a prima facie case of defamation and defamation per se based on Grammer's statements in the Request for Restraining Order and to Officer Vo.

- 45 -

Charalambopoulos has otherwise failed to satisfy the § 27.005(c) standard to the extent that his claims for defamation and defamation per se are based on Grammer's allegedly publishing defamatory statements by making defamatory statements to the Los Angeles County Sheriff's Department regarding the Alleged Stalking, or by making defamatory statements to the media pertaining to the Request for Restraining Order, or by making defamatory statements to the media pertaining to the report of the Alleged Stalking to the Los Angeles County Sheriff's Department.  The court allows Charalambopoulos to conduct specified and limited discovery before entering a final decision on whether he has satisfied the § 27.005(c) standard concerning the remaining grounds for his claims for defamation and defamation per se.[25]

IX

The court considers next whether Charalambopoulos has met his burden under § 27.005(c) to establish by clear and specific evidence a prima facie case of malicious prosecution.

---

[25]Because Charalambopoulos has not met his burden under § 27.005(c) as to the remaining grounds, the court does not now consider whether Grammer would have a valid defense.  *See infra* note 29 (explaining that court need not now consider whether privilege defense might apply to other alleged statements that form bases of Charalambopoulos' defamation claims).  The court does not foreclose Grammer from attempting to establish a defense if Charalambopoulos satisfies his burden under § 27.005(c) after conducting discovery and filing a supplemental response.

A

"Actions for malicious prosecution are not favored in the law and therefore [the court] must strictly adhere to the tort's carefully defined elements." *Lermon v. Minyard Food Stores, Inc.*, 2014 WL 6466840, at *4 (Tex. App. 2014, no pet.) (citing *Luce v. Interstate Adjusters, Inc.*, 26 S.W.3d 561, 566 (Tex. App. 2000, no pet.)).  To establish his claim for malicious prosecution under Texas law, Charalambopoulos must prove: (1) a criminal prosecution was commenced against him; (2) Grammer initiated or procured that prosecution; (3) the prosecution terminated in Charalambopoulos' favor; (4) he was innocent of the charges; (5) Grammer lacked probable cause to initiate the prosecution; (6) Grammer acted with malice; and (7) Charalambopoulos suffered damages. *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 792 n.3 (Tex. 2004).

B

Grammer maintains that Charalambopoulos' malicious prosecution claim rests solely on his allegations relating to the Alleged Assault, but that he lacks clear and specific evidence of a prima facie case for several essential elements.  Grammer contends that there is no clear evidence that she, rather than Harris County law enforcement officials, initiated or procured the prosecution, because the decision to prosecute was left to Harris County law enforcement officials; that there is no clear and specific evidence that she lacked probable cause to report the incident, that she acted with malice, or that Charalambopoulos is actually innocent; and that Charalambopoulos' own, self-serving testimony about the events of October 16, 2013 is not clear evidence to demonstrate that the assault did not occur, that she

lacked probable cause to make a report, or that she acted with malice.

Charalambopoulos responds that the HPD report[26] indicates repeatedly that Grammer initiated the prosecution; that it is undisputed that the prosecution terminated in his favor; that Grammer, acting with malice, fabricated the Alleged Assault, and, as the grand jury found, lacked probable cause to instigate the prosecution; and that he has specifically pleaded and provided clear evidence of the damages he suffered from the malicious prosecution, including arrest, incarceration, and relinquishment of his property to post a bond.

## C

Charalambopoulos has satisfied his burden of establishing by clear and specific evidence a prima facie case that a criminal prosecution was commenced against him,[27] that the prosecution terminated in his favor, and that he suffered damages.  The remaining elements require clear and specific evidence of a prima facie case that Grammer initiated or procured the prosecution, that Charalambopoulos was innocent of the charges, that Grammer lacked probable cause to initiate the prosecution, and that she acted with malice.

Grammer contends that there is no clear evidence that she, rather than Harris County law enforcement officials, initiated or procured the prosecution.  Under Texas law, "[a] person *initiates* a criminal prosecution if [she] makes a formal charge to law enforcement

---

[26]Charalambopoulos asks the court to take judicial notice of the police report.

[27]Texas courts have held that a person who has been "no billed" by a grand jury has had a criminal prosecution commenced against him for purposes of a malicious prosecution claim.  *See, e.g., French v. French*, 385 S.W.3d 61, 70 (Tex. App. 2012, pet. denied) (citing cases).

authorities." *Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 292 (Tex. 1994) (emphasis added). "A defendant *procures* a criminal prosecution when [her] actions are enough to cause the prosecution, and but for [her] actions, the prosecution would not have occurred." *Hernandez v. Mendoza*, 406 S.W.3d 351, 354-55 (Tex. App. 2013, no pet.) (emphasis added); *French v. French*, 385 S.W.3d 61, 70-71 (Tex. App. 2012, pet. denied) (quoting *Browning-Ferris Indus.*, 881 S.W.2d at 293). When the decision to prosecute is left to the discretion of another, such as a law enforcement official or a grand jury, a defendant does not procure a criminal prosecution unless she knowingly provides false, material information, and the false information causes the criminal prosecution. *Hernandez*, 406 S.W.3d at 355 (citing *King v. Graham*, 126 S.W.3d 75, 76 (Tex. 2003) (per curiam)).

In his affidavit, Charalambopoulos avers that Grammer initiated and procured the prosecution by making false assault allegations to HPD contained in her October 16, 2013 statement to Officer Vo, her October 29, 2013 statement to HPD Officer B.R. Massie ("Officer Massie"), and her November 18, 2013 sworn statement to Officer Massie. He cites documents from the HPD report, including statements in the documents that Grammer "wanted to press charges," P. App. 60, "was looking to pursue charges," *id.* at 71, and "will press charges," *id.* at 58. The court concludes that, based on evidence that Grammer reported the Alleged Assault, provided Officers Vo and Massie with information related to the Alleged Assault, and stated on numerous occasions that she wanted to press charges, Charalambopoulos has established by clear and specific evidence a prima facie case of the essential element that Grammer initiated or procured the prosecution. The court also

- 49 -

concludes based on evidence discussed above that Charalambopoulos has established by clear and specific evidence a prima facie case that he was innocent of the charges and that Grammer lacked probable cause to initiate the prosecution.

The final element requires that Charalambopoulos establish by clear and specific evidence a prima facie case that Grammer "acted with malice, which is defined as ill will, evil motive, gross indifference, or reckless disregard of the rights of others." *French*, 385 S.W.3d at 69 (citation omitted). This element "is proved by direct or (usually) circumstantial evidence," such as "[f]ailing to fully and fairly disclose all material information and knowingly providing false information to law enforcement." *Id.* (citations omitted). Charalambopoulos has established by clear and specific evidence a prima facie case that he did not commit the Alleged Assault. He has also produced clear and specific evidence that Grammer fabricated evidence of the assault by, for example, using makeup to create the false appearance of a black eye, when doctor's reports from October 16, 2013 indicate there was no bruising to Grammer's face. The court concludes that Charalambopoulos has satisfied his § 27.005(c) burden as to the malice element of his malicious prosecution claim.

Because Charalambopoulos has satisfied his burden as to each essential element of his malicious prosecution claim, the court holds that Grammer is not entitled to dismiss this claim under the TCPA.

X

Charalambopoulos brings claims for negligence and gross negligence, contending that Grammer owed him a duty "to not fabricate an assault and stalking allegations that never occurred." Am. Pet. ¶ 27.

A

Grammer contends that Charalambopoulos cannot establish by clear and specific evidence a prima facie case of the essential elements of these claims because, as a matter of Texas law, a person owes no duty to another not to defame or maliciously prosecute the person, and relief is available through a claim for defamation or malicious prosecution. Charalambopoulos responds that a negligence claim can be brought when fact questions arise concerning defamatory publications.

B

To support his contention that he has a viable negligence claim, Charalambopoulos relies on *Mitre v. Brooks Fashion Stores, Inc.*, 840 S.W.2d 612 (Tex. App. 1992, writ denied), *overruled on other grounds*, *Cain v. Hearst Corp.*, 878 S.W.2d 577, 579 (Tex. 1994). Although *Mitre* supports Charalambopoulos' position, it is inconsistent with *Oliphant v. Richards*, 167 S.W.3d 513 (Tex. App. 2005, pet. denied). *See Davis v. Kroger Co.*, 2008 WL 904722, at *4 (N.D. Tex. Mar. 31, 2008) (Lindsay, J.) (noting inconsistency). The Supreme Court of Texas has not addressed this question. As the court explains above, because the Supreme Court of Texas has not decided this question, this court must make an *Erie*-guess about how it would rule. The court predicts that the Supreme Court of Texas

would follow similar reasoning to that of *Oliphant* and hold that a plaintiff "cannot maintain a negligence claim based solely on a duty not to defame," *Oliphant*, 167 S.W.3d at 518, and that "[t]hough a defamation claim not involving a public figure contains a negligence liability standard, that is a component of the defamation claim itself, not a separate claim," *id*. *See also Smith v. Sneed*, 938 S.W.2d 181, 185 (Tex. App. 1997, no writ) ("We therefore decline to hold that a duty exists outside the torts of malicious prosecution and defamation not to falsely accuse someone of criminal wrongdoing."); *Wal-Mart Stores, Inc. v. Medina*, 814 S.W.2d 71, 73-74 (Tex. App. 1991, writ denied) ("[T]here is no recovery in tort for damage caused by an incorrect, but not malicious prosecution.").

Although Charalambopoulos asserts claims for negligence and gross negligence, he is essentially alleging claims for defamation and malicious prosecution. Accordingly, the court holds that, to the extent Charalambopoulos' negligence and gross negligence claims are based on conduct covered by the TCPA, he has failed to meet his burden under § 27.005(c) because these claims, as alleged, are not viable as a matter of law.

## XI

The court now considers Charalambopoulos' fraud claim.

### A

In Texas, the essential elements of common law fraud are:

> (1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result.

- 52 -

*Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004) (citations omitted) (Texas law).  Charalambopoulos alleges, as relevant here, that "[t]he media, law enforcement officials, hospital physicians, Hotel ZaZa employees, talk show hosts and others justifiably relied on [Grammer's] false representations concerning the fabricated October 16, 2013 assault and the April 2014 Stalking Story."  Am. Pet. ¶ 29.

Grammer contends that, to prevail on his fraud claim, Charalambopoulos must prove that *he* acted in reliance on an alleged misrepresentation, not that a third party acted in reliance.  She maintains that Charalambopoulos cannot establish by clear and specific evidence a prima facie case that he acted in reliance on any alleged misrepresentation because, accepting his other allegations, he knew the assault and stalking stories were fabricated.

Charalambopoulos responds that he has outlined Grammer's material misrepresentations; that  the "misrepresentations were 'intended to be acted upon,' were 'relied upon,' and 'caused injury'" because Grammer filed a false sworn statement to obtain an improper restraining order and then fabricated the Alleged Stalking and published this story through various media sources, and that "direct communication is not necessary to be held liable for fraud."  P. Br. 18.

B

The court concludes that Charalambopoulos has failed to establish by clear and specific evidence a prima facie case of the essential element that he relied on any fraudulent misrepresentation by Grammer.  In support of his fraud claim, Charalambopoulos only

alleges that "[t]he media, law enforcement officials, hospital physicians, Hotel ZaZa employees, talk show hosts and others" justifiably relied on Grammer's false statements. Am. Pet. ¶ 29.  Even if the court assumes *arguendo* that the category of unspecified "others" is intended to include Charalampoulos himself (which seems unlikely), he has adduced no evidence that he in any way acted in reliance on any of Grammer's allegedly false statements.  To the contrary, he asserts that he knew from the outset that Grammer's statements were false.  *See James v. Calkins*, 446 S.W.3d 135, 148 (Tex. App. 2014, no pet. h.) (holding that parties failed to adduce clear and specific evidence to establish prima facie case of actual fraud in TCPA case where parties asserting fraud claim "assert[ed] that they knew from the beginning that the representations of appellants were false.").

To the extent Charalampoulos contends that Grammer defrauded others by making false statements about him, he has failed to establish by clear and specific evidence a prima facie case because he cannot recover for fraudulent statements made to others that he did not later rely on himself.  *See Hofstetter v. Loya Ins. Co.*, 2011 WL 1631938, at *4 (Tex. App. 2011, pet. denied) ("A false representation made indirectly to a third party *and later relied on by the defrauded party* may constitute fraud under certain circumstances." (emphasis added, citation omitted)).

Accordingly, the court holds that, to the extent Charalampoulos' fraud claim is based on conduct covered by the TCPA, he has failed to meet his burden under § 27.005(c).

XII

The court turns finally to Charalambopoulos' IIED claim.

A

To prevail on a claim for IIED under Texas law, "a plaintiff must prove that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe." *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995) (citation omitted).  IIED, however, is a "gap-filler" tort that was created for the "limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).  "Where the gravamen of a plaintiff's complaint is really another tort, [IIED] should not be available." *Id.* (citing cases).

Grammer maintains, *inter alia*, that Charalambopoulos is alleging that his severe emotional distress resulted from Grammer's making false and defamatory statements about the Alleged Assault and Alleged Stalking; that because of the availability of defamation and malicious prosecution claims, there are no "gaps" to be filled by an IIED claim; and that Charalambopoulos cannot independently maintain this claim.  Charalambopoulos responds that Grammer's argument presumes that he is using his IIED claim to circumvent other causes of action, and that he has specifically pleaded and submitted evidence that Grammer intentionally or recklessly fabricated both the Alleged Assault and Alleged Stalking, the

stories were extreme and outrageous, and he suffered emotional distress as a result.

## B

The facts that form the basis for Charalambopoulos' IIED claim are the same as those that form the basis for his defamation and malicious prosecution claims. Charalambopoulos predicates his IIED claim on Grammer's "intentionally and recklessly ma[king] false and defamatory statements about the October 16, 2013 Fabricated Assault and the April 2014 Stalking Story." Am. Pet. ¶ 30. In support of this claim, he does not refer to any additional, unrelated facts in the record that support an independent claim for IIED. And because his claims for defamation and malicious prosecution afford him a remedy, there is no gap left to fill with an IIED cause of action. *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) ("Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill."). Because an IIED claim is unavailable to Charalambopoulos as a matter of law, he cannot satisfy his burden under § 27.005(c) as to this claim, and it is dismissed.

## XIII

The court now turns to the third sequential step and addresses whether Grammer is entitled to dismissal under § 27.005(d) on the ground that she has established by a preponderance of the evidence each essential element of a valid defense to Charalambopoulos' remaining claims.[28]

---

[28]All findings made in this memorandum opinion and order concerning whether Grammer has made the required showing under § 27.005(d) are made under a preponderance

A

Grammer contends that the statements contained in the Request for Restraining Order are absolutely privileged because they were made in the course of a judicial proceeding; that her statements on social media pertaining to the filing of her Request for Restraining Order are absolutely privileged; that her out-of-court statements that bear some relationship to a judicial proceeding are absolutely privileged; and that her statements to law enforcement officials are qualifiedly privileged because they were made to public officials as part of their duty to protect the public.  Charalambopoulos responds that Grammer's "filing a false sworn statement" is not absolutely privileged because, when it was filed, no judicial proceedings had begun, and that Grammer's statements in the Request for Restraining Order and to Officer Vo are not qualifiedly privileged because they were made with malice. Charalambopoulos also argues that Grammer's statements to her M.D. Anderson cancer surgeon and to the Los Angeles County Sheriff's Department are not qualifiedly privileged.

B

Under Texas law, publications made in the course of judicial and quasi-judicial proceedings are absolutely privileged.  This "mean[s] that any statement made in the trial of any case, by anyone, cannot constitute the basis for a defamation action, or any other action." *Hernandez v. Hayes*, 931 S.W.2d 648, 650 (Tex. App. 1996, writ denied) (citing *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982) (per curiam); *Reagan v. Guardian Life Ins. Co.*,

_____

of the evidence standard, as § 27.005(d) requires.

- 57 -

166 S.W.2d 909, 912 (1942)).   The judicial proceedings privilege is "tantamount to immunity," and, where there is an absolute privilege, no civil action in damages for oral or written communications will lie, "even though the language is false and uttered or published with express malice."   *Id.* (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 768 (Tex. 1987); *Reagan*, 166 S.W.2d at 912).   The scope of the absolute privilege extends to all statements made in the course of the proceeding, whether made by the judges, jurors, counsel, parties, or witnesses, and attaches to all aspects of the proceeding, including statements made in open court, hearings, depositions, affidavits, and any pleadings or other papers in the case. *Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 27 (Tex. App. 2004, pet. denied); *Lane v. Port Terminal R.R. Ass'n*, 821 S.W.2d 623, 625 (Tex. App. 1991, writ denied).   The privilege extends to statements made in contemplation of, and preliminary to, judicial proceedings.  *Watson v. Kaminski*, 51 S.W.3d 825, 827 (Tex. App. 2001, no pet.). For example, "actions taken or statements made in conjunction with pursuit of a temporary restraining order . . . will not support a claim for defamation as a matter of law." *Montemayor v. Ortiz*, 208 S.W.3d 627, 652 (Tex. App. 2006, pet. denied) (citing *James*, 637 S.W.2d at 916).

Grammer has established that the statements made *in* her Request for Restraining Order, which was filed in the Los Angeles County Superior Court on October 29, 2013, are absolutely privileged.  Accordingly, to the extent Charalambopoulos' claims for defamation are based on statements contained *in* the Request for Restraining Order, the court grants

Grammer's motion and dismisses these claims under § 27.005(d).[29]

## C

Grammer maintains that her statements to Officer Vo were qualifiedly privileged because they were statements "to a public officer . . . who is authorized or privileged to take action if the defamatory matter is true." *Hurlbut*, 749 S.W.2d at 768 (quoting Restatement (Second) of Torts § 598 (1977)); *see also Clark v. Jenkins*, 248 S.W.3d 418, 432 (Tex. App. 2008, pet. denied) ("[T]he initial communication of alleged wrongful or illegal acts to an official authorized to protect the public from such acts is subject to a qualified privilege." (citation omitted)).  Unlike an absolute privilege, this "conditional privilege is defeated when the privilege is abused," *Hurlbut*, 749 S.W.2d at 768, and the "qualifying criterion . . . is that the statements must be made in good faith and without malice," *Zarate v. Cortinas*, 553 S.W.2d 652, 655 (Tex. Civ. App. 1977, no writ).  Accordingly, "[i]f a defendant establishes

---

[29]Under Texas law, the absolute judicial proceedings privilege also applies to out-of-court communications, "but the out-of-court communication in order to be privileged must bear some relationship to the proceeding and must be in furtherance of the attorney's representation." *Hill v. Herald-Post Publ'g Co.*, 877 S.W.2d 774, 782 (Tex. App. 1994, writ granted) (citing *Russell v. Clark*, 620 S.W.2d 865, 870 (Tex. Civ. App. 1981, writ ref'd n.r.e.)), *rev'd in part on other grounds*, 891 S.W.2d 638 (Tex. 1994).  Because the privilege defense does not apply in the TCPA context to the grounds for Charalambopoulos' defamation claims that fall outside TCPA coverage, because this issue is immaterial to the defamation claims based on statements to Officer Vo and *in* the Request for Restraining Order, and because the remaining grounds of the defamation claims are subject to development through discovery and may not even be viable under the § 27.005(c) standard, the court will not consider at this time whether the privilege defense applies to any other alleged statements that form the basis for the defamation claims, e.g., statements *about* the Request for Restraining Order but not *in* the request itself, or statements to the Los Angeles County Sheriff's Department accusing Charalambopoulos of stalking.

the privilege, the burden shifts to the plaintiff to prove that the defendant made the statements with actual malice." *Burbage v. Burbage*, 447 S.W.3d 249, 254 (Tex. 2014) (citing *Dun & Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896, 898 (Tex. 1970)). "Actual malice, in the defamation context, means 'the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true.'" *Id.* (quoting *Hagler v. Proctor & Gamble Mfg. Co.*, 884 S.W.2d 771, 772 (Tex. 1994) (per curiam)).

Grammer has failed to prove that her statements to Officer Vo were qualifiedly privileged. Grammer contends that she can establish the absence of malice on the basis that Charalambopoulos is collaterally estopped from arguing that he did not abuse her. The court concludes below that Grammer has failed to establish that the doctrine of collateral estoppel applies. Because Grammer has not adduced any other evidence to prove the absence of malice, the court concludes she is not entitled to dismissal under § 27.005(d) of Charalambopoulos' defamation claims based on Grammer's statements to Officer Vo.

## D

### 1

Grammer contends that Charalambopoulos' claims based on the assertion that she fabricated the allegations of assault are barred under the doctrine of collateral estoppel because, in issuing the Restraining Order, the Los Angeles County Superior Court found by a preponderance of the evidence that Charalambopoulos had "engaged in a past act of abuse against Grammer." D. Br. 15. Grammer posits that Charalambopoulos is collaterally estopped from relitigating the issue of whether he engaged in the conduct that Grammer

alleged occurred on the morning of October 16, 2013, and that "he cannot impugn the California court's determination by asserting claims premised on the factual contention that he did not engage in such conduct and that Grammer fabricated the allegations of assault." *Id.* at 15-16.

Charalambopoulos responds that the claims in this lawsuit are not "identical" to those in the California action; that the case on which Grammer relies, *Ritchie v. Konrad*, 10 Cal. Rptr. 3d 387 (Cal. Ct. App. 2004), expressly limits itself to the *renewal* of a restraining order and does not announce any sweeping collateral estoppel of civil actions brought on defamation or malicious prosecution claims; and that, in any event, an equitable exception to collateral estoppel applies because Grammer fraudulently obtained the Restraining Order by presenting false testimony.

2

"To determine the preclusive effect of a state court judgment in a federal action, federal courts must apply the law of the state from which the judgment emerged." *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 (5th Cir. 2006) (citation and internal quotation marks omitted). Under California law, collateral estoppel applies when (1) the issue sought to be precluded from relitigation is identical to one decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and based on the merits; and (5) the party against whom preclusion is sought is the same as, or in privity with, the party to the former proceeding. *Lucido v. Superior Court*, 795 P.2d 1223, 1225 (Cal. 1990).

Grammer contends that, in issuing the Restraining Order, the Los Angeles County Superior Court was required to find by a preponderance of the evidence that Charalambopoulos had engaged in a past act of abuse against Grammer.[29]  In support, she cites the minutes from a January 6, 2014 hearing, which state, in pertinent part: "The Court grants petitioner's request for domestic violence restraining order based on a preponderance of the evidence, for a period of three years.  Restraining Order after Hearing is signed and filed this date.  Order expires on January 6, 2017."  D. App. 73.  These minutes do not establish by a preponderance of the evidence, however, that the remaining issues to be litigated here—e.g., whether the allegedly defamatory statements Grammer made about Charalambopoulos to Officer Vo were true—is identical to one that was necessarily decided in the California proceedings.  Because the minutes are not specific in this respect, and because Grammer offers no other evidence that would enable the court to identify the issues that the Los Angeles County Superior Court actually decided in issuing the Restraining Order, Grammer has failed to establish each essential element of the defense of collateral

---

[29]The Domestic Violence Prevention Act ("DVPA"), Cal. Fam. Code Ann. § 6200 *et seq.*, authorizes the court to issue a restraining order for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved, if an affidavit or testimony shows, "to the satisfaction of the court, reasonable proof of a past act or acts of abuse."  Cal. Fam. Code Ann. § 6300.  "Abuse" is defined as intentionally or recklessly causing or attempting to cause bodily injury, sexual assault, or placing a person "in 'reasonable apprehension of imminent serious bodily injury'" to that person or to another.  *Gonzalez v. Munoz*, 67 Cal. Rptr. 3d 317, 322 (Cal. Ct. App. 2007) (quoting Cal. Family Code § 6203).  Courts construe the DVPA liberally, and may issue a domestic violence restraining order when the applicant makes the required showing by a preponderance of the evidence.  *See Gdowski v. Gdowski*, 95 Cal. Rptr. 3d 799, 805 (Cal. Ct. App. 2009).

estoppel.  *See, e.g., People v. Sterling*, 2002 WL 1998213, at *5 (Cal. Ct. App. 2002)

("[W]ithout persuasive evidence of the *ground* of Judge Arnason's ruling, [the court could

not] conclude that the [issue raised in present case] was the same issue as that actually ruled

on [in case before Judge Arnason].  As [defendant] had the burden of proof on this issue, he

has failed to establish this essential element of collateral estoppel.").  Accordingly, Grammer

is not entitled to dismissal of Charalambopoulos' claims on this basis.

XIV

Grammer moves under § 27.003(c) to stay all discovery in this case until the court

decides her motion to dismiss under the TCPA.  She has also filed an unopposed motion for

a hearing on her motion to dismiss.

The court denies Grammer's motion to stay discovery, in part as moot and in part

because the court is permitting Charalambopoulos to conduct specified and limited discovery

under § 27.006(b).  The motion is moot in part because discovery has been stayed while the

motion to dismiss has been pending, and, except as permitted under this memorandum

opinion and order, it will remain stayed until the court enters a final decision on the

remaining defamation claims that are covered by the TCPA.  It is denied in part because the

court is allowing Charalambopoulos to conduct some discovery.  Under § 27.003(c), the

suspension of discovery during the pendency of a motion to dismiss does not apply when

discovery is allowed under § 27.006(b).

The court also denies Grammer's motion for a hearing.  Although the motion is

unopposed, and although § 27.004 provides for a hearing and imposes time limits on when

it must be held, the requirement of a hearing is procedural and not binding on this court. Furthermore, the court has determined that Grammer's motion can be decided without convening oral argument or conducting an evidentiary hearing.[30]

\*   \*   \*

In summary, Charalambopoulos' claims for negligence, gross negligence, fraud, and IIED are dismissed.  Charalambopoulos' claim for malicious prosecution is not dismissed.

Regarding Charalambopoulos' claims for defamation and defamation per se, to the extent these claims are based on statements that Grammer made *in* the Request for Restraining Order, they are dismissed because such statements are absolutely privileged.  To the extent these claims are based on statements that Grammer made to Officer Vo, they are not dismissed.  To the extent they are based on Grammer's statements to third parties that do not pertain to any judicial or official proceeding—such as the tweets to her Twitter followers, her statements on *The Dr. Oz Show*, her statement to the Hotel ZaZa employee, and her

---

[30]Grammer does not appear to object to this approach.  In response to the court's inquiry about whether federal or state law applied to her motion, she states that she

> does not contend that the hearing timetable sections of the TCPA are in themselves substantive provisions that govern federal court practice.  Further, Grammer is aware that Northern District of Texas Local Rule 7.1(g) provides that "[u]nless otherwise directed by the presiding judge, oral argument on a motion will not be held."  Grammer's request for a hearing was made pursuant to the Court's discretion and in furtherance of the protections afforded a party sued in an action covered by the TCPA.

D. Br. Relating to Unopposed Mot. for Hearing 3.

statements to doctors at M.D. Anderson—they are not dismissed. To the extent these claims are based on Grammer's allegedly making defamatory statements to the Los Angeles County Sheriff's Department regarding the Alleged Stalking, or making defamatory statements to the media pertaining to the Request for Restraining Order, or making defamatory statements to the media pertaining to the report of the Alleged Stalking to the Los Angeles County Sheriff's Department, the court defers a final decision and permits Charalambopoulos to conduct specified and limited discovery.

The court therefore grants in part and denies in part Grammer's motion to dismiss under the TCPA; denies her motion to stay discovery, in part as moot and in part because it is permitting Charalambopoulos to conduct specified and limited discovery; and denies her motion for a hearing. The court grants in part and denies in part Charalambopoulos' motion for discovery, and it grants him 60 days after this memorandum opinion and order is filed to complete the discovery and 90 days after this memorandum opinion and order is filed to file a supplemental response to Grammer's motion to dismiss.

**SO ORDERED**.

January 29, 2015.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE