IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DIMITRI CHARALAMBOPOULOS, | § | |
|     Plaintiff/Counter-Defendant | § | |
| | § | |
| vs. | § | CASE NUMBER 3:14-cv-02424-D |
| | § | Hon. Sidney Fitzwater |
| | § | |
| CAMILLE GRAMMER | § | |
|     Defendant/Counter-Plaintiff | § | |

**Plaintiff/Counter-Defendant's Supplemental Response to Defendant/Counter-Plaintiff Camille Grammer's Motion to Dismiss Plaintiff's First Amended Petition <u>Pursuant to the Texas Citizens Participation Act</u>**

Guy G. Fisher
TBA# 07051010
gfisher@pulf.com
Joe J. Fisher
TBA# 00787471
jfisher@pulf.com
PROVOST ★ UMPHREY
LAW FIRM, L.L.P.
490 Park Street
P. O. Box 4905
Beaumont, Texas 77704
Phone: (409) 835-6000
Fax: (409) 813-8625

Kirk F. Lechtenberger, P.C.
State Bar No. 12072100
2525 McKinnon, Ste. 420
Dallas, Texas 75201
Phone: (214) 871-1804
kflech@sbcglobal.net

Attorneys for Plaintiff/Counter Defendant
Dimitri Charalambopoulos

## TABLE OF CONTENTS

I. INTRODUCTION..........................................................................................................................4

II. FACTUAL BACKGROUND...........................................................................................................6

III. ARGUMENT AND AUTHORITIES...............................................................................................8

   A. Grammer published defamatory statements to the media regarding the alleged October 16, 2013 assault. .............................................................................................................................8

   B. Grammer through her publicist Howard Bragman republished defamatory statements to the media regarding the alleged October 16, 2013 assault. .................................................................11

   C. Grammer published other defamatory statements to the media about the alleged October 16, 2013 assault. ...............................................................................................................................13

   D. Grammer and her assistant Scott MacLean published defamatory statements to the Los Angeles County Sheriff's Department regarding the April 7, 2014, stalking incident. ..........................14

   E. Camille Grammer published defamatory statements to the media regarding the April 7, 2014, alleged stalking incident.................................................................................................................16

IV. CONCLUSION ...........................................................................................................................18

CERTIFICATE OF SERVICE................................................................................................................19

**Cases**

*Stephan v. Baylor Medical Center at Garland*, 20 S.W.3d 880, 890 (Tex. App. 2000 no pet.) .................. 12

**Rules**

§ 27.005(c) ..............................................................................................................................4, 5
§ 27.006 (b) ................................................................................................................................4
§ 804(b)(3)(A),(B) ......................................................................................................................5

**TO THE HONORABLE SIDNEY FITZWATER**

**UNITED STATES CHIEF DISTRICT JUDGE:**

Plaintiff/Counter-Defendant Dimitri Charalambopoulos (hereinafter "Plaintiff") files this his *Supplemental Response to Defendant/Counter-Plaintiff Camille Grammer's Motion to Dismiss Plaintiff's First Amended Petition Pursuant to the Texas Citizens Participation Act* ("*Plaintiff's Supplemental Response*"), and would respectfully show as follows:

## I. INTRODUCTION

On January 29, 2015, this Court issued its Memorandum Opinion and Order ("Opinion and Order") concerning *Defendant/Counter-Plaintiff Camille Grammer's Motion to Dismiss Plaintiff's First Amended Petition Pursuant to the Texas Citizens Participation Act* ("*Defendant's Motion to Dismiss*") (Doc. 40). In the Court's Opinion and Order it was ruled that Plaintiff was permitted pursuant to § 27.006 (b) to conduct limited discovery to prove the following by clear and specific evidence:

1) Grammer published defamatory statements to the media regarding the alleged October 16, 2013 assault;

2) Grammer published defamatory statements to the media regarding the Temporary Restraining Order;

3) Grammer published defamatory statements to the Los Angeles County Sheriff's Department regarding the alleged stalking;

4) Grammer published defamatory statements to the media regarding the report of the alleged stalking to the Los Angeles County Sheriff's Department. (See Doc. 40, Pgs. 40-44).

The discovery ordered by the Court included specific discovery from Camille Grammer ("Grammer"), Howard Bragman ("Bragman") and Scott MacLean ("MacLean") as follows:

**"By any method available under the Federal Rules of Civil Procedure, provided that unless the parties otherwise agree and the witness concurs, a deposition may only be taken where the witness resides, is employed, or regularly conducts business in person. All such discovery must be conducted or served so that depositions are completed, and responses to other discovery requests are received by Charalambopoulos, no later than 60 days after this memorandum opinion and order is filed."** (See Doc. 40, Pg. 45)

Plaintiff in accordance with the Court's Order served Requests for Production and deposition notices for Grammer, Bragman and MacLean to produce documents and provide sworn deposition testimony. This discovery was completed prior to the 60 day deadline ordered by the Court. The discovery conducted by Plaintiff resulted in the following evidence being produced by Grammer, Bragman, MacLean and/or Grammer's attorneys:

| | |
|---|---|
| Exhibit 4: | Deposition of Camille Grammer (P. App. 225-266) |
| Exhibit 5: | Deposition of Howard Bragman (P. App. 267-282) |
| Exhibit 6: | Deposition of Scott MacLean (P. App. 283-308) |
| Exhibit 7: | October 28 and 29, 2013 text message communications between Grammer and *Radar Online* assistant managing editor, Jen Heger regarding alleged October 16, 2013 assault. (CG Pg. 26-71; P. App. 309-354) |
| Exhibit 8: | October 28, 2013 e-mail exchange between Grammer and *All Things Real Housewives* reporter, "Nicki" regarding the alleged October 16, 2013 assault (CG 1; P. App. 355) |
| Exhibit 9: | E-mail communication between Bragman (Grammer's publicist) and media sources (HB 1-33, 40, 42, 44, 46-47, 49-50, 57-63, 66; P. App. 356-403) |
| Exhibit 10: | Grammer guard shack surveillance video (CG 113-115; P. App. 404) |
| Exhibit 11: | Photograph of Plaintiff given to guard shack by Grammer (CG 117; P. App. 405) |

Plaintiff files this his Supplemental Response to Grammer's Motion to Dismiss which will satisfy the § 27.005(c) clear and specific evidence standard cited by the Court concerning Plaintiff's claims for defamation. (Court's Opinion and order, Doc. 40, Pgs. 40-44).

Plaintiff respectfully requests that the Court deny Defendant/Counter-Plaintiff's Motion to Dismiss as to the defamatory statements listed above due to the clear and specific evidence

contained in Plaintiff's Supplemental Response timely filed within 90 days of the Court's Opinion and Order. (Court's Opinion and order, Doc. 40)

## II. FACTUAL BACKGROUND

Plaintiff hereby incorporates all facts and exhibits contained in (Doc. 20) in this Supplemental Response to Defendant/Counter-Plaintiff's Motion to Dismiss. The limited discovery ordered by this Court has produced clear and specific evidence of the following:

1. Grammer published defamatory statements to media sources prior to filing the Request for Temporary Restraining Order against Plaintiff; (Exhibit 7, CG 26-71, P. App. 309-354; Exhibit 8, CG 1, P. App. 355; Grammer deposition Pgs. 16-17) (P. App. 229)

2. Grammer's Tweet and defamatory statements to the media before the Request for Temporary Restraining Order was filed prompted requests from numerous media sources for Grammer through her publicist Bragman to republish the Request for Temporary Restraining Order documents concerning Grammer's defamatory accusations of the alleged October 16, 2013 assault; (Exhibit 9, HB 1-33, 40, 42, 44, 46-47, 49-50, 57-63, 66, P. App. 356-403).

3. Grammer's publicist republished numerous copies of the Request for Temporary Restraining Order to numerous media sources; (Exhibit 9, HB 1-33, 46, 49, 57-63, 66, P. App. 356-388, 392, 394, 396-403; Exhibit 5, Bragman deposition Pgs. 50-52, P. App. 280).

4. Grammer and MacLean on April 7, 2014, published defamatory statements to the Los Angeles County Sheriff's Department by falsely reporting that Plaintiff attempted to gain access to Grammer's residence in violation of the Temporary Restraining Order issued against Plaintiff. (Exhibit 6, MacLean deposition Pgs. 58-61, P. App. 298).

5. Grammer published defamatory statements to Jen Heger of *Radar Online* by stating Plaintiff attempted to gain access to Grammer's residence in violation of the Temporary Restraining Order issued against Plaintiff. (Exhibit 4, Grammer deposition Pgs. 128-130, P. App. 232-233).

6. Grammer had actual knowledge that Plaintiff did not attempt to gain access to her residence after reviewing the surveillance video on or about April 15, 2014. (Exhibit 4, Grammer deposition Pg. 144, P. App. 261).

6

7.   Grammer was advised by counsel not to contact *Radar Online* to inform them Plaintiff did not attempt to gain access to her residence. (Exhibit 4, Grammer deposition Pg. 154, P. App. 264).

8.   The "guard shack" surveillance video produced by counsel for Grammer clearly proves that Sharif Ahmed Nagib ("Nagib") not Plaintiff was the individual who tried to gain access to Grammer's residence. (Exhibit 10, CG 113-115, P. App. 404; Exhibit 12, Stephen Gonzales' Affidavit, P. App. 406-425).

9.   A DMV search of the license plate shows that the vehicle depicted in the surveillance video ("vehicle") is owned by Nagib and the address the vehicle is registered to 826 North Bonnie Beach Place, Los Angeles, California. ("826 North Bonnie") (Exhibit 12, Stephen Gonzales' Affidavit, P. App. 406-425).

10.  On or about September 2014, Nagib re-registered the vehicle to license plate No. 7GLE684. (Exhibit 12, Stephen Gonzales' Affidavit, P. App. 406-410).

11.  The surveillance video shows Nagib is wearing the same brand of clothing as Plaintiff and has fixed his hair in a way to match Plaintiff's appearance. (Exhibit 10, CG 113-115, P. App. 404; Exhibit 12, Stephen Gonzales' Affidavit, P. App. 406-425).

12.  Plaintiff's investigator, Stephen Gonzales contacted the tenant ("an elderly Hispanic woman") at the 826 North Bonnie address that Nagib registered the car under. The 826 North Bonnie tenant claimed that Nagib was not a resident of the house and that she was unaware who Nagib was when shown a photograph. (Exhibit 12, Stephen Gonzales' Affidavit, P. App. 406-425).

13.  Shortly after questioning the tenant of 826 North Bonnie, Stephen Gonzales was contacted by Nagib by cell phone (310) 735-XXXX. During the telephone conversation, Nagib admitted to Stephen Gonzales the following: Nagib admitted he was the driver of the car depicted in the surveillance video. Nagib admitted he was contacted by Jasmina who was a friend of his and the female passenger of the car depicted in the surveillance video. Nagib admitted Jasmina asked him to drive her to 3250 Serra Road, Malibu, California 90265 ("3250 Serra Road"). Nagib admitted when they arrived at the guard shack at 3250 Serra Road, the security guard denied entry. Nagib admitted that historically he never had long hair before, but had recently let it grow out before appearing at the guard shack on April 7, 2014. Nagib further stated that before he would meet with Mr. Gonzales or Plaintiff's counsel, he wanted to speak to his sister, who is an attorney. Nagib further admitted that **"this has become a burden and I want it to be done with."** (Exhibit 12, Affidavit of Stephen Gonzales, P. App. 406-425) (*Plaintiff*

*anticipates that Grammer's attorneys will object to the portion of Stephen Gonzales' affidavit concerning his conversation with Nagib as hearsay. However, this sworn affidavit evidence of Stephen Gonzales satisfies the hearsay exception as an admission against interest. § 804(b)(3)(A),(B).*

### III. ARGUMENT AND AUTHORITIES

For sake of brevity, Plaintiff will not regurgitate in this Supplemental Response the legal authorities cited in his Original Response to Defendant's Motion to Dismiss. (Doc. 20) Plaintiff respectfully requests that the case law cited in his Original Response to Defendant's Motion to Dismiss (Doc. 20) and the case law cited by the Court in the Opinion and Order (Doc. 40) be incorporated in Plaintiff's Supplemental Response for all purposes.

**A. Grammer published defamatory statements to the media regarding the alleged October 16, 2013 assault.**

Camille Grammer published several defamatory statements to media sources separate and apart from any statements contained in the Request for Temporary Restraining Order her attorneys filed on or about October 29, 2013. Specifically, Camille Grammer made defamatory statements to the following individuals in the news media:

1) Jen Heger with *Radar Online* (See Exhibit 4, Grammer's deposition, Pg. 15; P. App. 229);

2) Nicki with *All Things Real Housewives* (See Exhibit 4, Grammer's deposition, Pg. 16; P. App. 229);

Specifically, Camille Grammer made the following defamatory statements by text message to Jen Heger from *Radar Online* prior to the Temporary Restraining Order was ever filed:

10/28/13, 8:03 p.m. from Jen Heger to Camille Grammer – **"What did he do to you?"**

10/28/13, 9:15 p.m. from Jen Heger to Camille Grammer – **"Call me."**

10/28/13, 11:02 p.m. from Jen Heger to Camille Grammer – **"Was it Dimitri? Off record"**

8

10/28/13, 11:35 p.m. from Camille Grammer to Jen Heger – **"Yes"**

10/28/13, 11:35 p.m. from Camille Grammer to Jen Heger – **"Please off the record"**

10/28/13, 11.36 p.m. from Camille Grammer to Jen Heger – **"Don't write anything until tomorrow please."**

10/29/13, 6:10 a.m. from Jen Heger to Camille Grammer – **"K... where did this happen?"**

10/29/13, 7:17 a.m. from Camille Grammer to Jen Heger – **"I agree. It happened in a hotel room I'm (sic) Houston four days after my surgery."**

10/29/13, 3:32 p.m. from Jen Heger to Camille Grammer – **"hey lady! call me this a.m. when you get a sec. want to catch up. he will totally regret this"**

10/29/13, 5:23 p.m. from Jen Heger to Camille Grammer – **"were docs filed in la?"**
(See Exhibit 7, CG 26-71, P. App. 309-355).

Camille Grammer affirmed in her March 10, 2015, sworn deposition that she received the text messages listed above from Jen Heger before the Request for Temporary Restraining Order was every filed. (See Exhibit 4, Grammer deposition Pgs. 41, 45-61, 71-76, 81-82, P. App. 235, 236-240, 243-244, 245-246). During this text message exchange, Grammer stated that Plaintiff assaulted her in a hotel room in Houston four days after her surgery and intimated that court documents would be filed. In addition, Grammer admits that this text message communications occurred prior to the Request for Temporary Restraining Order being filed. (See Exhibit 4, Grammer deposition Pgs. 81-82, P. App. 245-246). Jen Heger as assistant managing editor of *Radar Online* published on the internet at 5:00 a.m. the article attached to Plaintiff's Original Response to Defendant's Motion to Dismiss. (See Exhibit 9, HB 49, P. App. 394; also see Exhibit 1, Doc. 20 – already filed with Court, P. App. Pgs. 20-22). The text message exchange between Grammer and Jen Heger that occurred on October 28, 2013, provides clear and specific evidence that Grammer published the critical information used by Jen Heger (author of the

9

internet article) attached to Plaintiff's Response to Defendant's Motion to Dismiss. (See Exhibit 9, HB 49, P. App. 394; also See Exhibit 1, Doc. 20 – already filed with Court, P. App. Pgs. 20-22).

Grammer also had an e-mail exchange with a media source ("Nicki") who writes for *All Things Real Housewives*. (Exhibit 8, CG 1, P. App. 355). On October 28, 2013, 12:34 p.m., Nicki e-mailed Grammer and stated: **"Hi Camille, I'm so worried about you. I've read your Tweets about violence. Are you ok?"** On October 28, 2013, at 6:14 p.m., Camille Grammer responded: **"Off the record please. I was physically assaulted by Dimitri in our hotel tell (sic) in Houston two day (sic) after I got out of the hospital. More info will be released tomorrow I think. I thought it was going to be today. But my lawyers are working on it. Thanks for asking. xoxo"** On October 28, 2013, Nicki responds: **"Of course off the record. I'm so sorry to hear this. I can't believe he would raise a hand to you. That is so disturbing to me. And with all you've been through... What an asshole. I hope you are safe now and never have to deal with that again. How are you feeling? I've been keeping you in my prayers. Love Nicki"** (Exhibit 8, CG 1, P. App. 355).

Grammer testifies in her deposition that she remembers receiving the e-mail from Nicki and responding to Nicki's e-mail. (Exhibit 4, Grammer's deposition Pgs. 82-92, P. App. 246-248). Grammer testifies that this e-mail was sent before the TRO was filed and that the e-mail accuses Plaintiff of assaulting her in a Houston hotel room and informs Nicki that court papers would be filed by her lawyers tomorrow. (Exhibit 4, Grammer's deposition Pgs. 82-92, P. App. 246-248). In addition, it is clear that Grammer's defamatory Tweet to her 198,000 followers, (cited in Plaintiff's Original Response to Grammer's Motion to Dismiss), was the impetus that

sparked all the media coverage regarding Grammer's defamatory acts. (Exhibit 8, CG 1, P. App. 355; see also Exhibit 7, CG 26-71, P. App. 309-354).

The evidence of Grammer's conversations with Jen Heger and Nicki provide clear and specific evidence that Grammer published defamatory statements to these two media sources before Grammer's Request for Temporary Restraining Order request was ever filed with the Court. Grammer's defamatory statements in her text to Jen Heger provides clear and specific evidence that Grammer published the statements contained in the *Radar Online* article attached to Plaintiff's Affidavit (Exhibit 1, P. App. 16, 20-22) in his Response to Defendant's Motion to Dismiss and supports Plaintiff's defamation claims that Grammer published defamatory statements to the media. (Exhibit 9, HB 49, P. App. 394; Exhibit 1, Doc. 20 – already filed with Court, P. App. Pgs. 20-22).

This clear and specific evidence cited above, provides more than speculation that Grammer published the statement that "Plaintiff assaulted her to multiple on-line internet news sites" as stated in Plaintiff's Affidavit. (Exhibit 1, Doc. 20 – already filed with Court, P. App. 16)

**B.     Grammer through her publicist Howard Bragman republished defamatory statements to the media regarding the alleged October 16, 2013 assault.**

Grammer through her publicist Howard Bragman and/or his publicist company, *Fifteen Minutes*, republished the Request for Temporary Restraining Order containing Grammer's defamatory statements to numerous media sources (See Exhibit 5, deposition of Howard Bragman Pgs. 50-52, P. App. 280). These media sources include the following: *ABC.com*, (Exhibit 9, HB 4, P. App. 359); *CBS.com*, (Exhibit 9, HB 59-60, P. App. 398-399); *Radar Online*, Exhibit 9, HB 58, P. App. 397); *Gossipcop.com*, (Exhibit 9, HB 57, P. App. 396); *Inside Edition*, (Exhibit 9, HB 59, P. App. 398); *People Magazine*, (Exhibit 9, HB 61, P. App. 400); *Spin Media*, (Exhibit 9, HB 62, P. App. 401); *Extra TV*, (Exhibit 9, HB 63, P. App. 402). The

11

documents (Exhibit 9, HB 4-33, P. App. 359-388) that were sent to media outlets republished the false statements by Grammer to the numerous media sources cited above. Bragman confirmed in his deposition, **"What I can tell you is once the TRO was filed and granted, that we got requests from the media… as a matter of courtesy, because they are publicly filed, stamped documents, as you see, we give them to them as accommodation."** (Bragman Deposition Pg. 50).

The documents and testimony of Bragman cited above provide clear and specific evidence that Grammer through her publicist republished the false statements contained in the Request for Temporary Restraining Order. Under Texas law a party who reasonably foresee[s] that [her] defamatory statements will be repeated to third parties may be held responsible for the republications. *Stephan v. Baylor Medical Center at Garland*, 20 S.W.3d 880, 890 (Tex. App. 2000 no pet.); (Doc. 40 at Pg. 42).

The documents and testimony by Grammer cited above provide clear and specific evidence that the media requests for these documents would never have occurred but for Grammer's Tweet, Grammer's texts to Jen Heger, Grammer's e-mail to Nicki and Jen Heger's October 29, 2013, 5:00 a.m. article, "Camille Grammer Intends On Filing Police Report Against Ex-Boyfriend Dimitri Charalambopoulos, Alleging Physical Assault: Source." (See Exhibit 9, HB 1-4, 40, 42, 44, 46-47, 49-50, 57-63, 66, P. App. 356-359, 389, 390, 391, 392-393, 394-395, 396-402, 403). In addition, Grammer's republishing (through her publicist) of the Request for Temporary Restraining Order furthered the media "firestorm" which was clearly fueled by Grammer's statements prior to the Request for Temporary Restraining Order ever being filed. (See Exhibit 9, HB 1-4, 40, 42, 44, 46-47, 49-50, 57-63, 66, P. App. 356-359, 389, 390, 391, 392-393, 394-395, 396-402, 403). This clear and specific evidence conclusively proves that the

republishing of the Request for Temporary Restraining Order documents by Grammer through her publicist was a proximate cause of numerous media sources spreading Camille Grammer's claims that Plaintiff assaulted her as stated in Plaintiff's Affidavit (See Exhibit 1, Doc. 20 – already filed with Court, P. App. 16). This clear and specific evidence provides the necessary proof that Grammer should have reasonably foreseen that, in making the statements in the Request for Temporary Restraining Order and republishing the statements through her publicist numerous online news websites would republish her defamatory statements. (Court's Opinion and Order, Doc. 40 at Pg. 42).

  C. **Grammer published other defamatory statements to the media about the alleged October 16, 2013 assault.**

Grammer made additional defamatory statements to freelance writer Eric Mitchell of *Hollywood Life*. (Exhibit 4, Grammer deposition Pg. 18, P. App. 230; Exhibit 9, HB 66, P. App. 403). Grammer's defamatory statements to Eric Mitchell include the following:

> "I want to encourage women everywhere to speak up for themselves when it comes to domestic violence and abuse. I'm hanging in there and I feel strong," Camille tells us. "At first when it happened, I wasn't going to say anything. However, after talking to my therapist she encouraged me to speak up. She told me me, (sic) 'You need to use your voice. You are stronger than you know.' Domestic violence is an epidemic and there are too many silent women suffering. They are afraid to speak up. I have to speak up for my own recovery. I want to empower other women."

> "I want women to know there is NO excuse to hit a women. (sic) I was recuperating in my bed when he hit me. I just got out of a major surgery. I was completely vulnerable. He was suppose to be there to take care of me, comfort me, comfort me, (sic) bring me food. I still wake up in the middle of the night with this vision in my head of being hit."

> "This is the same man that bought me spiritual book 'The Four Agreements' and the First Agreement is to be Impeccable With Your Word. ...so that's what I am doing,"

> "I am still in shock. This is the man who said he loved me. For me, I have to be strong. I have to speak up," "And like I said, there are no excuses. I had to

13

**speak up because if not it leads to denial, and something like this never gets better, only worse."** (Exhibit 1, Doc. 20 – already filed with Court, P. App. 25-27; Exhibit 9, HB 66, P. App. 403).

Grammer admits to providing quotes to Eric Mitchell and further admits to making most of the statements cited above in her March 10, 2015 deposition. (Exhibit 4, Grammer deposition Pgs. 27-37, P. App. 232-234). This clear and specific evidence clearly shows that Grammer published the information contained in the *Hollywood Life* article cited in Plaintiff's Affidavit and attached as an exhibit to Plaintiff's Response to Defendant's Motion to Dismiss. (Exhibit 1, Doc. 20 – already filed with Court, P. App. 25-27).

### D. Grammer and her assistant Scott MacLean published defamatory statements to the Los Angeles County Sheriff's Department regarding the April 7, 2014, stalking incident.

Grammer had actual knowledge that evidence existed which would conclusively prove whether Plaintiff was one of the people who appeared at Grammer's guard shack on April 7, 2014. Grammer was aware that a surveillance video was available because the very next day she contacted the Sheriff's Department to get a case number as told by her security company. (Exhibit 4, Grammer deposition Pg. 120-121, P. App. Pg. 255). However, Grammer and MacLean's deposition testimony provides clear and specific evidence that Grammer and MacLean (on behalf of Grammer) published defamatory statements to the Los Angeles County Sheriff's Department. (Exhibit 4, Grammer deposition Pg. 117, 120-121, P. App. 254-255). Grammer and MacLean published the defamatory statement that Plaintiff had violated a Restraining Order even though they had failed to ascertain whether Plaintiff had actually appeared at Grammer's guard shack. (Exhibit 6, MacLean deposition Pgs. 58-61, P. App. 298). In addition, per Grammer's instructions, MacLean requested the security guard to contact the Sheriff's Department. (Exhibit 4, Grammer deposition Pg. 116-119, P. App. 254-255).

The entire incident of Nagib and Jasmina (who identified herself as Lacy Lane on the surveillance video - see Exhibit 10) is so incredible that when the sworn testimony attached to Plaintiff's Supplemental Response is analyzed the mere occurrence of the April 7, 2014 incident proves that the incident was not a random act. Nagib, after growing his hair out similar to Plaintiff and donning a "Polo" shirt was requested by "Jasmina" or a/k/a "Lacy Lane" to driver her to Grammer's residence. (Exhibit 10, guard shack surveillance video, P. App. 404; Exhibit 12, Stephen Gonzales' Affidavit, P. App. 406-410). The odds of probability that **1) an unidentified male ("Nagib")** (See Exhibit 4, Grammer deposition Pg. 160, P. App. 265; also see Exhibit 12, See Stephen Gonzales' Affidavit, P. App. 406-410); **2) was requested to appear at Grammer's residence** (See Exhibit 12, Stephen Gonzales' Affidavit, P. App. 406-410); **3) wearing a "Polo" shirt matching the exact brand of shirt purchased for Plaintiff by Grammer** (Exhibit 4, Grammer deposition Pgs. 148-149, P. App. 262); **4) while the picture provided by Grammer to the guard shack shows Plaintiff wearing a Polo shirt** (Exhibit 11, CG 117, P. App. Pg. 405); **5) while mimicking Plaintiff's hairstyle** (Exhibit 4, Grammer deposition Pg. 150; P. App. 363); **6) who sufficiently resembled Plaintiff to fool a security guard to believing it was Plaintiff** (Exhibit 4, Grammer deposition Pgs. 104-105, 107, P. App. 251, 252); **7) when the occurrence of people trying to gain access to Grammer's home had never previously happened** (Exhibit 4, Grammer deposition Pgs. 114-116, P. App. 254); **8) during the time when Grammer knew Plaintiff was subject to a Temporary Restraining Order to not contact Grammer,** (Exhibit 4, Grammer deposition Pgs. 117, 139, P. App. 254, 260); **9) while Grammer was out-of-town in Hawaii making it difficult for Grammer to review surveillance video** (Exhibit 4, Grammer deposition Pgs. 102, 145-146, P. App. 251, 281-

282); **10) driving a car registered to an address for a Hispanic tenant that claimed Nagib never resided at the address** (Exhibit 12, Stephen Gonzales' Affidavit, P. App. 406-410); **11) Nagib changes the vehicle registration and license plate months after his appearance at Grammer's guard shack** (Exhibit 12, Stephen Gonzales' Affidavit, P. App. 406-410); **12) after the tenant is questioned by Plaintiff's investigator, Nagib several hours later contacts Plaintiff's investigator** (Exhibit 12, Stephen Gonzales' Affidavit, P. App. 406-410); **13) Nagib informs Plaintiff's investigator he had never had long hair before but let his hair grow out before appearing at the guard shack** (Exhibit 12, Stephen Gonzales' Affidavit, P. App. 406-410); **14) Nagib refused to be interviewed by Plaintiff's investigator or counsel until he spoke to his sister who is an attorney** (Exhibit 12, Stephen Gonzales' Affidavit, P. App. 406-410); and **15) Nagib told Plaintiff's investigator, "this has become a burden and I want it to be done with"** (Exhibit 12, Stephen Gonzales' Affidavit, P. App. 406-410); is so astronomical that the very appearance of Nagib under these circumstances at Grammer's guard shack provides clear and specific evidence that this "alleged stalking" was not a random incident. Plaintiff is either a victim of an extremely devious plot to slander his name or, he is the most unfortunate individual that has ever walked the face of the earth.

E.    **Camille Grammer published defamatory statements to the media regarding the April 7, 2014, alleged stalking incident.**

Clear and specific evidence shows that Camille Grammer contacted Jen Heger (*Radar Online*) to report that Plaintiff and another woman appeared at her resident "guard shack" (Exhibit 4 Grammer deposition, Pg. 128-129, P. App. 256-257). Grammer personally published defamatory statements to Jen Heger that Plaintiff and another woman had driven up to her guardhouse. (Exhibit 4, Grammer deposition Pg. 129, P. App. 257). Grammer also told Jen

Heger that the security guard said that Plaintiff drove up and was trying to gain access through the guard gate. (Exhibit 4, Grammer deposition Pg. 130, P. App. 258).

Despite Grammer having actual knowledge that a surveillance video existed, Grammer's unreasonable method of investigating the "alleged stalking" was to call a *Radar Online* reporter Jen Heger to ask if *Radar Online* photographers had seen Plaintiff around LA. (Exhibit 4, Grammer deposition Pgs. 128-129, P. App. 257). *Radar Online* was the first internet news source to report Plaintiff appeared at the Grammer guard shack (Exhibit 1, Doc. 20 – already filed with Court, P. App. 137-139). Grammer's own sworn testimony provides clear and specific evidence that her defamatory statements published to *Radar Online* reporter, Jen Heger was the reason *Radar Online* had the information to break the "alleged stalking" story. (Exhibit 4, Grammer deposition Pgs. 129-130, P. App. 257-258; See also Exhibit 1, Doc. 20 – already filed with Court P. App. 137-139). This *Radar Online* story was attached to Plaintiff's Response to Defendant's Motion to Dismiss. (Exhibit 1, Doc. 20 – already filed with Court, P. App. 137-139).

On or about April 15, 2014, Grammer was able to conclude that Plaintiff was not the individual who was at the guardhouse on April 7, 2014. (Exhibit 4, Grammer deposition Pg. 144, P. App. 261). Grammer did not contact *Radar Online* or Jen Heger to inform them that Plaintiff did not attempt to gain access to her residence through the guard shack. (Exhibit 4, Grammer deposition Pg. 154, P. App. 264).

The very fact that Grammer failed to inform *Radar Online* that Plaintiff had not violated the Temporary Restraining Order by appearing at her guard shack after Grammer had published her defamatory statements to Jen Heger, provides clear and specific evidence that Grammer's intent was to defame Plaintiff's name and reputation.

17

## IV.   CONCLUSION

Plaintiff has provided clear and specific evidence of the following:

1) Grammer published defamatory statements to the media regarding the alleged October 16, 2013 assault;

2) Grammer published defamatory statements to the media regarding the Temporary Restraining Order;

3) Grammer published defamatory statements to the Los Angeles County Sheriff's Department regarding the alleged stalking;

4) Grammer published defamatory statements to the media regarding the report of the alleged stalking to the Los Angeles County Sheriff's Department. (See Doc. 40, Pgs. 40-44).

Plaintiff respectfully requests that the Court issue an order denying Defendant/Counter Plaintiff Camille Grammer's Motion to Dismiss Plaintiff's First Amended Petition pursuant to the Texas Citizens Participation Act in a manner that is consistent with the clear and specific evidence filed in this Supplemental Response as ordered by this Court on January 29, 2015 (Doc. 40).

                **Respectfully submitted,**
                PROVOST ★ UMPHREY
                LAW FIRM, L.L.P.
                490 Park Street
                P. O. Box 4905
                Beaumont, Texas  77704
                Phone: (409) 835-6000
                Fax:  (409) 813-8625

By:    <u>/s/ Guy G. Fisher</u>
         Guy G. Fisher
         TBA# 07051010
         gfisher@pulf.com
         Joe J. Fisher
         jfisher@pulf.com
         TBA# 00787471

> Kirk F. Lechtenberger, P.C.
> State Bar No. 12072100
> 2525 McKinnon, Ste. 420
> Dallas, Texas 75201
> Phone: (214) 871-1804
> kflech@sbcglobal.net
> ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record on this the 24th day of April, 2015.

/s/ Guy G. Fisher