IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DIMITRI CHARALAMBOPOULOS, §
                          §
        Plaintiff-counterdefendant, §
                          §  Civil Action No. 3:14-CV-2424-D
VS.                       §
                          §
CAMILLE GRAMMER,          §
                          §
        Defendant-counterplaintiff. §

MEMORANDUM OPINION
AND ORDER

Following the completion of specified and limited discovery concerning whether plaintiff-counterdefendant Dimitri Charalambopoulos ("Charalambopoulos") can satisfy the publication element of the remaining grounds of his claims for defamation and defamation per se, and the consideration of supplemental briefing, the court decides whether defendant-counterplaintiff Camille Grammer ("Grammer") is entitled to dismissal of these grounds under the Texas Citizens' Participation Act ("TCPA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001-27.011 (West 2014).  For the reasons that follow, the court holds that Grammer is entitled to dismissal of Charalambopoulos' defamation and defamation per se claims to the extent they are based on Grammer's publishing the contents of her Request for Restraining Order to the media and reporting (through her assistant) the Alleged Stalking to the Los Angeles County Sheriff's Department.

I

In *Charalambopoulos v. Grammer*, 2015 WL 390664 (N.D. Tex. Jan. 29, 2015) (Fitzwater, J.) ("*Charalambopoulos I*"), the court addressed whether Grammer was entitled to dismissal under the TCPA of Charalambopoulos' claims for defamation, defamation per se, malicious prosecution, negligence, gross negligence, fraud, and intentional infliction of emotional distress ("IIED"). The court concluded that some aspects of Grammer's alleged conduct were not covered by the TCPA and therefore were not subject to dismissal under this statute. *Id.* at *8-9, 13. The court then applied the TCPA three-step sequential analytical process to Grammer's alleged conduct that was covered. It concluded that Grammer was not entitled to dismissal under the TCPA of Charalambopoulos' claim for malicious prosecution; was entitled to dismissal of his claims for negligence, gross negligence, fraud, and IIED; and was entitled in part, and not entitled in part, to dismissal of his claims for defamation and defamation per se. *Id.* at *28. The court held that, to the extent Charalambopoulos' claims for defamation and defamation per se claims are based on Grammer's allegedly making defamatory statements to the Los Angeles County Sheriff's Department regarding the Alleged Stalking, or making defamatory statements to the media pertaining to the report of the Alleged Stalking to the Los Angeles County Sheriff's Department, or making defamatory statements to the media pertaining to the Request for Restraining Order, Charalambopoulos should be permitted to conduct specified and limited discovery for purposes of attempting to satisfy the publication element of these claims. *Id.* The court declined to consider whether Grammer had valid defenses to the remaining grounds of these claims because

Charalambopoulos had not yet met his burden under § 27.005(c) of establishing a prima facie case. But the court noted that it was not foreclosing Grammer from attempting to establish a defense if Charalambopoulos could satisfy his burden after conducting discovery and filing a supplemental response to her motion to dismiss. *Id.* at \*19 n.25 & 25 n.29.

Charalambopoulos has now conducted the discovery permitted under *Charalambopoulos I*, and the parties have filed supplemental briefing.

## II

The first question the court must decide is whether Charalambopoulos has satisfied his burden under § 27.005(c) of establishing by clear and specific evidence a prima facie case for the essential publication element of his defamation and defamation per se claims.

## A

In *Charalambopoulos I* the court held that Charalambopoulos had failed to establish by clear and specific evidence a prima facie case of defamation and defamation per se based on statements made to the Los Angeles County Sheriff's Department about the Alleged Stalking or to the media pertaining to the report of the Alleged Stalking to the Los Angeles County Sheriff's Department because he had not shown that Grammer had published any such statement. *Charalambopoulos I*, 2015 WL 390664, at \*17. The court also held that Charalambopoulos had failed to meet the publication element concerning his defamation and defamation per se claims to the extent based on Grammer's allegedly making defamatory statements to the media pertaining to the Request for Restraining Order (which Grammer requested based on the Alleged Assault). *Id.* The court granted Charalambopoulos' request

- 3 -

to conduct discovery to address these deficiencies.  *Id.* at *19.

B

Charalambopoulos has produced undisputed evidence that Grammer's publicist, Howard Bragman ("Bragman"), sent copies of Grammer's publicly-filed Request for Restraining Order and the attached photographs to the numerous media sources that requested copies.[1]  He has also presented undisputed evidence that, at Grammer's request, her assistant, Andrew Scott MacLean, Sr. ("MacLean"), contacted the Los Angeles County Sheriff's Department on April 7, 2014 and reported that "the gentleman who [his] boss had a TRO in force, that he was at the gate and trying to gain admission to the property."  P. 4/27/15 App. 299.  Charalambopoulos has therefore satisfied the publication element to the extent his claims for defamation and defamation per se are based on statements that Grammer allegedly made to the Los Angeles County Sheriff's Department about the Alleged Stalking or the republication to the media of the contents of the Request for Restraining Order. Charalambopoulos has failed, however, to adduce clear and specific evidence that Grammer published a defamatory statement to the media regarding her report of the Alleged Stalking

_____

[1]To the extent Charalambopoulos relies on statements by Grammer to Jen Heger ("Heger") from Radar Online, to "Nicki," who writes for "All Things Real Housewives," and to Eric Mitchell from *Hollywood Life*, the court has already held that statements such as these to third parties that do not specifically refer to (1) the Request for Restraining Order, (2) a report filed with the Los Angeles County Sheriff's Department in connection with the Alleged Stalking, or (3) any other judicial or official proceeding are not covered by the TCPA.  *Charalambopoulos I*, 2015 WL 390664, at *8-9, 13.  This means that Charalambopoulos can proceed on his claims for defamation and defamation per se based on statements such as these without first satisfying § 27.005(c) of the TCPA.

- 4 -

to the Los Angeles County Sheriff's Department, or alleging that Charalambopoulos' alleged actions on April 7, 2014 violated a court order.[2]

### III

The court now considers whether Grammer has established by a preponderance of the evidence each essential element of a valid defense to the grounds of Charalambopoulos' claims for defamation and defamation per se that are at issue.

### A

Grammer contends that the statements contained in her publicly-filed Request for Restraining Order, copies of which Bragman forwarded to various media outlets in response to specific requests, are absolutely privileged and cannot support Charalambopoulos' claims for defamation and defamation per se.

Under Texas law,[3] publications made in the course of judicial and quasi-judicial

---

[2]To the extent Charalambopoulos relies on evidence that Grammer contacted Heger and told her that "the security guard at [her] community said that [Charalambopoulos] drove up and was trying to gain access to [her]—get in through the guard gates[.] P. 4/27/15 App. 258, Grammer's statement is not a "communication[] in or pertaining to any proceeding or other context that falls within the definition of the exercise of the right to petition." *Charalambopoulos I*, 2015 WL 390664, at *8 (citing § 27.001(4)(A)-(E)). Because Grammer's alleged statement to Heger does not fall within the scope of the TCPA, it is not necessary for Charalambopoulos to satisfy § 27.005(c) of the TCPA before proceeding on defamation and defamation per se claims based on these alleged statements.

[3]Although, as the court explains below, Grammer argues that California law applies to her assertion of absolute privilege regarding statements to the Los Angeles County Sheriff's Department, neither Grammer nor Charalambopoulos contends that California law governs whether Grammer's republication of the contents of her Request for Restraining Order is absolutely privileged. Because Texas and California law do not appear to conflict in this respect, *see, e.g.*, Cal. Civ. Code § 47(d) ("A privileged publication . . . is one made

proceedings are absolutely privileged.  This "mean[s] that any statement made in the trial of any case, by anyone, cannot constitute the basis for a defamation action, or any other action." *Hernandez v. Hayes*, 931 S.W.2d 648, 650 (Tex. App. 1996, writ denied) (citing *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982) (per curiam); *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 166 S.W.2d 909, 912 (1942)).   The judicial proceedings privilege is "tantamount to immunity," and, where there is an absolute privilege, no civil action in damages for oral or written communications will lie, "even though the language is false and uttered or published with express malice."  *Id.* (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 768 (Tex. 1987); *Reagan*, 166 S.W.2d at 912).   The scope of the absolute privilege extends to all statements made in the course of the proceeding, whether made by the judges, jurors, counsel, parties, or witnesses, and attaches to all aspects of the proceeding, including statements made in open court, hearings, depositions, affidavits, and any pleadings or other papers in the case.  *Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 27 (Tex. App. 2004, pet. denied); *Lane v. Port Terminal R.R. Ass'n*, 821 S.W.2d 623, 625 (Tex. App. 1991, writ denied).  The privilege also extends to statements made in contemplation of, and preliminary to, judicial proceedings.  *Watson v. Kaminski*, 51 S.W.3d 825, 827 (Tex. App. 2001, no pet.).  For example, "actions taken or statements made in conjunction with pursuit of a temporary restraining order . . . will not support a claim for defamation as a matter of

---

. . . [b]y . . . a communication to, a public journal, of . . . a judicial, . . . legislative, or . . . other public official proceeding, or . . . of anything said in the course thereof." ), and because Grammer and Charalambopoulos both rely primarily on Texas law on this point, the court will do so as well.

law." *Montemayor v. Ortiz*, 208 S.W.3d 627, 652 (Tex. App. 2006, pet. denied) (citing *James*, 637 S.W.2d at 916).

The court held in *Charalambopoulos I* that Grammer had established that the statements made *in* her Request for Restraining Order, which was filed in the Los Angeles County Superior Court on October 29, 2013, are absolutely privileged. *Charalambopoulos I*, 2015 WL 390664, at *25. It now concludes that the absolute privilege applies to the same statements to the extent Bragman forwarded them to various media outlets.

In *Hill v. Herald-Post Publishing Co.*, 877 S.W.2d 774 (Tex. App. 1994, writ granted), *rev'd in part on other grounds*, 891 S.W.2d 638 (Tex. 1994), a Texas court of appeals held that "the mere delivery of pleadings in pending litigation to members of the news media does not amount to a publication outside of the judicial proceedings, resulting in a waiver of the absolute privilege." *Id.* at 783. The court reasoned that "[t]he harm resulting to the defamed party by delivering a copy of the suit or motion in a pending proceeding to the news media could demonstratively be no greater than it would be if the news media reporters got a tip from someone or found the pleadings on their own." *Id.* Other Texas courts have followed *Hill*, holding that the delivery to the media of a copy of a publicly-filed pleading does not waive the judicial proceedings privilege. *See Dall. Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 239 (Tex. App. 2000, pet. denied) ("We agree . . . that the mere delivery of pleadings in pending litigation to members of the news media does not amount to a publication outside of the judicial proceedings, resulting in the waiver of the absolute privilege." (citing *Hill*, 877 S.W.2d at 783)); *Riley v. Ferguson*, 1999 WL 191654,

at *4 (Tex. App. Apr. 8, 1999, pet. denied) (unpublished opinion) ("We find the reasoning

of the *Hill* court to be applicable to the facts of the instant case, in which copies of a pleading

were mailed to individuals and delivered to a condominium manager.  'To allow a party to

convert a privileged communication into an actionable communication simply by repeating

it to third persons would clearly frustrate the goal of this public policy.'" (citation omitted)).

Charalambopoulos only maintains that Bragman delivered copies of Grammer's

Request for Restraining Order to the media.  He does not contend that Grammer, Bragman,

or any other agent of Grammer made an out-of-court statement to the media concerning the

Request for Restraining Order or the proceedings related to Grammer's Request for

Restraining Order.  Accordingly, because Grammer has established by a preponderance of

the evidence that the absolute judicial proceedings privilege applies to Bragman's delivery

of a copy of Grammer's Request for Restraining Order to various media sources, the court

concludes that Grammer is entitled under the TCPA to dismissal of Charalambopoulos'

defamation and defamation per se claims to the extent based on the allegation that Grammer

made defamatory statements to the media pertaining to the Request for Restraining Order.

B

Grammer also asserts as a defense to Charalambopoulos' claims for defamation and

defamation per se that statements that she (or her agent on her behalf) made to law

enforcement personnel to report suspected criminal activity are absolutely privileged under

California law.  Because Grammer first raised her reliance on California law in her

supplemental reply brief, the court will decide this question under Texas law, which

- 8 -

Grammer raised in her initial motion to dismiss and reply brief.[4]

Grammer maintains that, under Texas law, the statements made to the Los Angeles County Sheriff's Department are qualifiedly privileged because they were made in good faith to a public official authorized to protect the public.  She points to evidence that her security guard, Al-Zahir Born ("Born"), told her and MacLean "that the male driver looked just like the photograph of Mr. Charalambopoulos and that [Born] was sure it was [he]."  D. 8/12/14 App. 85.  Grammer contends that she and MacLean therefore had a good faith belief that Charalambopoulos had attempted to gain access to her neighborhood, and that they did not know the information from Born was inaccurate at the time they made the report to law enforcement.

Under Texas law, a communication "to a public officer . . . who is authorized or privileged to take action if the defamatory matter is true" may be qualifiedly privileged. *Hurlbut*, 749 S.W.2d at 768 (quoting Restatement (Second) of Torts § 598 (1977)); *see also*

---

[4]In her motion to dismiss and original reply brief, Grammer argued under Texas law that statements to the Los Angeles County Sheriff's Department regarding the Alleged Stalking were qualifiedly privileged.  *See, e.g.,* D. 8/12/14 Br. 13 (arguing under Texas law that "any statements made to the Los Angeles County Sheriff's Department concerning the 'stalking story' enjoy a qualified privilege because they were made to public officials as part of their duty to protect the public."); D. 9/16/14 Reply 7 ("Grammer's statements to law enforcement officials, doctors, and the Hotel ZaZa employee are qualifiedly privileged."). She first asserted in her supplemental reply brief that California's absolute privilege applies to these statements.  The court therefore declines to consider this new argument in deciding Grammer's motion to dismiss.  *See, e.g., Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.)) ("[T]he court will not consider an argument raised for the first time in a reply brief."), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).

*Clark v. Jenkins*, 248 S.W.3d 418, 432 (Tex. App. 2008, pet. denied) ("[T]he initial communication of alleged wrongful or illegal acts to an official authorized to protect the public from such acts is subject to a qualified privilege." (citation omitted)).  Unlike an absolute privilege, this "conditional privilege is defeated when the privilege is abused," *Hurlbut*, 749 S.W.2d at 768, and the "qualifying criterion . . . is that the statements must be made in good faith and without malice," *Zarate v. Cortinas*, 553 S.W.2d 652, 655 (Tex. Civ. App. 1977, no writ).  Accordingly, "[i]f a defendant establishes the privilege, the burden shifts to the plaintiff to prove that the defendant made the statements with actual malice." *Burbage v. Burbage*, 447 S.W.3d 249, 254 (Tex. 2014) (citing *Dun & Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896, 898 (Tex. 1970)).  "Actual malice, in the defamation context, means 'the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true.'"  *Id.* (quoting *Hagler v. Proctor & Gamble Mfg. Co.*, 884 S.W.2d 771, 772 (Tex. 1994) (per curiam)).

Grammer has established by a preponderance of the evidence that the statements MacLean made to the Los Angeles County Sheriff's Department about the Alleged Stalking are privileged.  The burden therefore shifts to Charalambopoulos to prove that the statements were made with actual malice.  Although § 27.005(d) does not specify the standard that applies to a nonmovant who has a burden of proof concerning a movant's defense, the court knows of no reason to relax that standard from the clear and specific evidence to a preponderance of the evidence.  Under the TCPA, the preponderance of the evidence standard only applies to the movant who invokes the protections of the TCPA; the

- 10 -

nonmovant must satisfy a clear and specific evidence standard.  Charalambopoulos must therefore prove by clear and specific evidence that the statements made to the Los Angeles County Sheriff's Department were made with actual malice.

Charalambopoulos relies on the following as evidence of "actual malice": Grammer was aware that surveillance video was available because, the day after MacLean reported the Alleged Stalking, she contacted the Los Angeles County Sheriff's Department to get a case number, as requested by her security company; Grammer and MacLean published the defamatory statement that Charalambopoulos had violated the Restraining Order even though they had failed to ascertain whether he had actually appeared at Grammer's guard shack; the individual who actually tried to gain access to Grammer's residence was Sharif Ahmed Nagib ("Nagib"), who admitted that he was contacted by a friend, "Jasmina," who asked him to drive her to Grammer's residence, and Nagib admitted that he had never before had long hair, but he had recently let it grow out before appearing at Grammer's guard house on April 7, 2014; and that on that date, Nagib wore a polo shirt, which was the same brand of shirt Charalambopoulos was wearing in the picture Grammer provided to the guard shack.  This evidence is insufficient under the clear and specific standard to prove actual malice.

First, Charalambopoulos has produced no evidence to refute Born's statement that he told MacLean and Grammer that he was certain that the individual trying to gain entry into Grammer's residence was Charalambopoulos.  The mere fact that Grammer did not obtain copies of the surveillance video before reporting the incident to the Los Angeles County Sheriff's Department is insufficient, in light of Born's unrefuted statements, to show by clear

and specific evidence that Grammer reported the Alleged Stalking to the Sheriff's Department with knowledge that it was false or with reckless disregard as to its truth.

Second, to the extent Charalambopoulos intends to suggest that Grammer would have had knowledge that it was not Charalambopoulos who drove the car because *she* had somehow arranged for Nagib to appear at her guard shack looking like Charalambopoulos, he has failed to produce any evidence linking Nagib or "Jasmina" to Grammer, and any conclusion that Grammer was somehow involved would be purely speculative.

In sum, because Charalambopoulos has failed to make a clear and specific showing of actual malice with respect to Grammer's report of the Alleged Stalking to the Los Angeles County Sheriff's Department, the court concludes that the statements made to the Los Angeles County Sheriff's Department about the Alleged Stalking are qualifiedly privileged.

\*   \*   \*

Accordingly, based on the rulings in *Charalambopoulos I* and today's decision, Grammer's August 12, 2014 motion to dismiss Charalambopoulos' first amended petition pursuant to the TCPA is granted in part and denied in part.  Charalambopoulos' malicious prosecution claim remains; his claims for negligence, gross negligence, fraud, and IIED are dismissed; and his claims for defamation and defamation per se are dismissed except to the extent they are based on Grammer's statements to Officer M.H. Vo ("Officer Vo")[5] and on

---

[5]Grammer does not argue in her supplemental reply that the statements to Officer Vo are qualifiedly privileged, and the court has already concluded in *Charalambopoulos I* that Grammer did not meet her burden with respect to the application of this privilege to Grammer's statements to Officer Vo.  *See Charalambopoulos I*, 2015 WL 390664, at \*26.

statements to third parties that do not pertain to any judicial or official proceeding, such as the tweets to Grammer's Twitter followers, her statements on *The Dr. Oz Show*, her statement to the Hotel ZaZa employee, her statements to doctors at M.D. Anderson, and her statements to the media that do not pertain to any judicial or official proceeding.

**SO ORDERED**.

May 22, 2015.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

The court need not therefore address this question for purposes of deciding Grammer's motion to dismiss under the TCPA.

- 13 -