IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DIMITRI CHARALAMBOPOULOS, §
§
Plaintiff-counterdefendant, §
§ Civil Action No. 3:14-CV-2424-D
VS. §
§ *This memorandum opinion and order was filed under seal
§ on March 8, 2017. This unsealed version contains
CAMILLE GRAMMER, § redactions to which both parties have agreed.
§
§
Defendant-counterplaintiff. §

MEMORANDUM OPINION
AND ORDER

Plaintiff-counterdefendant Dimitri Charalambopoulos ("Charalambopoulos") moves

to compel discovery pertaining to defendant-counterplaintiff Camille Grammer's

("Grammer's") treating psychiatrist, and Grammer moves for sanctions based on

Charalambopoulos' initially filing the motion to compel and attached exhibits as public

documents. For the reasons that follow, the court grants in part and denies in part both

motions, and in part orders an *in camera* inspection.

I

This case is the subject of several prior memorandum opinions and orders. *See, e.g.,*

*Charalambopoulos v. Grammer*, 2017 WL 606639 (N.D. Tex. Feb. 15, 2017) (Fitzwater, J.);

*Charalambopoulos v. Grammer*, 2015 WL 2451182 (N.D. Tex. May 22, 2015) (Fitzwater,

J.); *Charalambopoulos v. Grammer*, 2015 WL 390664 (N.D. Tex. Jan. 29, 2015) (Fitzwater,

J.). The court will therefore pretermit a general discussion of the background facts and

procedural history and will discuss the matters that are pertinent to the motions it is now

deciding.

Charalambopoulos brings defamation and related claims against Grammer, alleging, *inter alia*, that Grammer falsely and publicly accused him of physically abusing and assaulting her on October 16, 2013 (the "Alleged Assault"). Grammer asserts counterclaims against Charalambopoulos for assault, battery, and defamation *per se*.

Grammer has designated her treating psychiatrist, Bethany J. Tucker, M.D. ("Dr. Tucker"), as a combined fact/non-retained rebuttal expert who

> may offer expert testimony in rebuttal to the expert testimony offered by Ms. Joanna Collins and/or Dr. Amy Gruszecki regarding their opinions that Charalambopoulos did not assault Grammer, that Grammer gave inconsistent descriptions of the assault, and intimations that Grammer was being untruthful . . . . Dr. Tucker may also offer expert testimony regarding medical implications of what Grammer told Dr. Tucker following the October 16, 2013 assault; that Grammer's statements about the October 16, 2013 assault have been consistent in description, believability, and truthfulness; that Grammer's actions following the incident on October 16, 2013 are consistent with someone who had recently been assaulted; and the reasons someone in Grammer's situation may choose to seek a restraining order following an assault.

P. 4/29/16 App. 3-4. Dr. Tucker has treated Grammer since █████

In response to Charalambopoulos' discovery requests, Grammer produced Dr. Tucker's treatment and billing records that cover therapy sessions dated ██████████ ████████████████████████████████████████████████████ ██████ Grammer has not produced any treatment or billing records that predate ███████ ██████ Grammer has redacted portions of Dr. Tucker's treatment records from sessions dated

September 27, 2015, September 29, 2015, and January 13, 2016; and during Dr. Tucker's April 6, 2016 deposition, she declined to answer questions relating to her treatment of Grammer prior to ████████████.

Charalambopoulos now moves to compel Grammer and Dr. Tucker to produce the following: all treatment notes and records related to Grammer from ████████████ all documents related to Grammer's becoming a patient; correspondence between Dr. Tucker and any individual representing Grammer; and the information redacted from the treatment notes Grammer produced. Charalambopoulos requests that the court order Dr. Tucker to answer questions regarding the information that Grammer's counsel redacted from Dr. Tucker's session notes and regarding Grammer's treatment prior to ████████. Charalambopoulos did not initially file his motion to compel or attached exhibits under seal.

Grammer opposes the motion to compel. She also separately moves for sanctions, contending that Charalambopoulos' failure to file the motion to compel and attachments under seal violated the September 3, 2015 protective order ("Protective Order") entered in this case, and resulted in conferring access to Grammer's confidential mental health information to various media outlets, causing her damages.

II

The court begins with Charalambopoulos' motion to compel.

A

Charalambopoulos moves the court to compel Grammer and Dr. Tucker to produce the following: all treatment notes and records related to Grammer from ████████████

all documents related to Grammer's becoming a patient, including, but not limited, to patient questionnaires and patient medical history forms; any correspondence between Dr. Tucker and any individual representing Grammer; and the information redacted from the treatment notes Grammer produced. Charalambopoulos also moves the court to require Dr. Tucker to answer Charalambopoulos' questions regarding the information that Grammer's counsel redacted from her session notes, and to answer questions regarding Grammer's treatment prior to ███████. He contends that Grammer's counsel has obstructed his efforts to discover ████████████████████████████████ and that Dr. Tucker's treatment of Grammer prior to the Alleged Assault is relevant because ██████ ████████████████████████████████████████ ████████████████████████████ were present before October 16, 2013.

Grammer responds that, under Texas and California law,[1] information relating to Grammer's treatment by Dr. Tucker is privileged, and because she only seeks damages for past pain and suffering (i.e., her claim for bodily injuries as a result of the Alleged Assault)—not for mental anguish—her mental health information prior to ████████████ ████████████████████████ is irrelevant, and the narrowly-construed patient-litigant exception does not apply. Grammer contends that, to the extent Charalambopoulos seeks discovery regarding ████████████████████████

[1]Grammer contends that the information relating to her treatment is privileged under both Texas and California law, and a full choice-of-law analysis is therefore unnecessary.

████████████████████████████████████████████

████████████████████████████████████ "a defensive assertion such as this does not

make the mental health condition a part of a party's claim or defense so as to waive the

privilege." D. 5/20/16 Br. 9. She maintains that Dr. Tucker has been retained primarily as

a fact witness—not a retained expert witness—who may also be qualified to express opinions

based on her knowledge, skill, experience, training, or education[2]—and that Grammer's

decision to make this designation does not require Dr. Tucker to disclose more than █████

of privileged information. Finally, Grammer posits that the equities weigh in favor of not

permitting further discovery from Dr. Tucker. Regarding Charalambopoulos' motion to

compel discovery of the redacted portions of Dr. Tucker's treatment notes, Grammer

contends that the redacted portions of the September 27, 2015 and September 29, 2015

session notes pertain to communications between Dr. Tucker and one of Grammer's

attorneys for the purpose of ensuring that the legal advice contemplated by Grammer's

counsel would not be harmful to Grammer's █████████ and are privileged. She maintains

that the redacted portions of the session notes from January 13, 2016 pertain solely to a

separate █████ matter, wholly unrelated to this lawsuit, and are privileged and irrelevant.

---

[2]Grammer contends that she designated Dr. Tucker to offer rebuttal testimony to Charalambopoulos' experts' opinions that Charalambopoulos did not assault Grammer, that Grammer gave inconsistent descriptions of the assault, and that Grammer was being untruthful. She also designated Dr. Tucker to offer rebuttal testimony regarding the nature of certain of Grammer's █████████████ the medical implications of what Grammer told Dr. Tucker after the Alleged Assault, the reasons a person might seek a restraining order after an assault, and her opinion that Grammer's actions were consistent with those of someone who had been the object of family violence.

Finally, Grammer contends that Charalambopoulos' request for communications between Dr. Tucker and any individual representing Grammer is overbroad and calls for privileged communications.

Charalambopoulos argues in his reply that, by designating Dr. Tucker as a non-retained rebuttal expert to testify ███████████████████████ her opinion related to Grammer's truthfulness, and her opinion related to whether the Alleged Assault occurred, Grammer has waived any psychiatrist-patient privilege, and that "Grammer is not permitted to use portions of privileged information as a 'sword' to gain evidence in support of her defense and then use the psychiatrist-patient privilege as a 'shield' to protect information [Charalambopoulos] is legally entitled to use during cross examination of Dr. Tucker." P. 6/7/16 Reply 4 (citation omitted). Regarding the redacted portions of Dr. Tucker's records and Grammer's attorneys' conversations with Dr. Tucker, Charalambopoulos argues that this information is not privileged and is relevant because the communications can be used to show bias.

B

The court considers first whether Charalambopoulos' motion to compel should be granted to the extent he seeks discovery relating to Dr. Tucker's treatment of Grammer prior to ███████

The Texas Rules of Evidence[3] recognize a "physician-patient" privilege and a "mental-health-information privilege." Tex. R. Evid. 509(c) provides:

> [i]n a civil case, a patient has a privilege to refuse to disclose and to prevent any other person from disclosing: (1) a confidential communication between a physician and the patient that relates to or was made in connection with any professional services the physician rendered the patient; and (2) a record of the patient's identity, diagnosis, evaluation, or treatment created or maintained by a physician.

Similarly, Rule 510(b) provides:

> [i]n a civil case, a patient has a privilege to refuse to disclose and to prevent any other person from disclosing: (A) a confidential communication between the patient and a professional; and (B) a record of the patient's identity, diagnosis, evaluation, or treatment that is created or maintained by a professional.[4]

Although Grammer's communications with, and treatment records maintained by, Dr. Tucker appear generally to fall within the protective scope of Rules 509(b) and 510(b), the court

---

[3]Fed. R. Evid. 501 provides that, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Charalambopoulos and Grammer appear to agree that California or Texas law governs Grammer's claim of privilege in this case, and that the court need not engage in a choice-of-law analysis because the outcome is the same under California or Texas law. Because Charalambopoulos and Grammer appear to agree that the outcome is the same under Texas or California law, the court in this memorandum opinion and order will rely primarily on Texas law.

[4]California law recognizes a similar privilege, providing, in Cal. Evid. Code § 1014, that a patient "whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist[.]"

must determine whether Grammer's actions in this litigation have waived the privilege.

2

In the analogous context of the attorney-client privilege, courts generally recognize that a privilege cannot be used simultaneously as both a sword and a shield. *See, e.g., Willy v. Admin. Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005) (stating that under doctrine of implied waiver, "a party may not use privileged information both offensively and defensively at the same time"); *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 n.18 (5th Cir.1999) ("In accord with this principle is a client's inability to, at once, employ the privilege as both a sword and a shield . . . . Attempts at such improper dual usage of the privilege result in waiver by implication."); *see also Valero Energy Corp. v. M.W. Kellogg Constr. Co.*, 866 S.W.2d 252, 255 (Tex. App. 1993, writ denied) ("Texas law will not permit a party to raise a claim or defense in a lawsuit, then attempt to stave off discovery related to that allegation through the use of privilege."). "In other words, when a party entitled to claim [a] privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege." *Willy*, 423 F.3d at 497.

> The principle is often expressed in terms of preventing a party from using the privilege as both a shield and a sword. In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege.

*Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (citations omitted). Thus a privilege "may implicitly be waived when [a] defendant asserts a claim that in fairness requires

- 8 -

examination of protected communications." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).

## 3

Grammer asserts counterclaims for assault and battery under Texas law, and alleges truth as a defense to Charalambopoulos' claims for defamation and defamation *per se*. To prevail on these claims and defenses at trial, Grammer will have to persuade the jury that her version of the Alleged Assault is true. Grammer apparently seeks to do this in part by offering Dr. Tucker's testimony to rebut the opinions of Charalambopoulos' experts that Charalambopoulos did not assault Grammer, and that impeach Grammer's version of what occurred during the Alleged Assault. Dr. Tucker testified at her deposition that she had diagnosed Grammer with ███████████████████████████████████ ███████████████████████████████████████████ Charalambopoulos maintains that the symptoms on which Dr. Tucker relied to diagnose Grammer with████ ████████████████████████████████████ he seeks to obtain evidence to this effect to use at trial to impeach Dr. Tucker's████████████

The court holds that Charalambopoulos is entitled to discover whether Dr. Tucker has previously ███████████████████████████████████████████ █████████████████████████████████████████████ ███████████████████ To permit Grammer to corroborate her claims regarding the Alleged Assault by relying on ████████████████████████████ but then to deny Charalambopoulos access to treatment records that might reveal that ████████████

- 9 -

████████████████████████████████████████████

████████████ would impermissibly enable Grammer to use the mental-health-information privilege as both a sword and a shield. Accordingly, the court concludes that Charalambopoulos is entitled to obtain discovery regarding whether Dr. Tucker had previously ████████████████████████████████████████████ ██████████ Grammer must produce these materials within 28 days of the date this memorandum opinion and order is filed.

Charalambopoulos is not entitled, however, to all treatment notes and records related to Grammer from ████████████████ all documents related to Grammer's becoming a patient, or an order requiring Dr. Tucker to answer questions regarding Grammer's treatment prior to ██████████ as Charalambopoulos requests in his motion. Setting aside the question whether Grammer's reliance on and disclosure of *some* of her mental health information resulted in a complete waiver of the privilege—Charalambopoulos contends that it does—Grammer has established[5] that her treatment by Dr. Tucker from ████████████████ ████████████████████████████████ is not relevant to any claim or defense in this case

---

[5] In the Fifth Circuit, "a party who opposes its opponent's request for production [must] 'show specifically how . . . each [request] is not relevant.'" *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005) (Lynn, J.) (quoting *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)); *see also Orchestratehr, Inc. v. Trombetta*, 178 F.Supp.3d 476, 506 (N.D. Tex. 2016) (Horan, J.) ("[T]he amendments to Rule 26(b) and Rule 26(c)(1) do not alter the basic allocation of the burden on the party resisting discovery to—in order to successfully resist a motion to compel—specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance (as now amended) or that a discovery request would impose an undue burden or expense or is otherwise objectionable." (citations omitted)).

other than as discussed above ███████████████████████████████ ██████████████████████████████ Under Fed. R. Civ. P. 26(b)(1), a party

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Rule 26(c) authorizes the court, for good cause shown, to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Although Grammer initially pleaded a counterclaim for intentional infliction of emotional distress ("IIED") and sought damages for past and future mental anguish, she no longer asserts an IIED claim or prays for mental anguish damages.[6]  She argues in her response that she

> seeks damages only for past pain and suffering related to the assault.  Grammer's assault and battery claims allege that she suffered "injuries resulting in pain and suffering," and her battery claim specifies that "Grammer sustained *bodily injuries* resulting in bruises, abrasions, scrapes, and swelling to Grammer's head, face, arms, and wrists."  Notably, Grammer previously withdrew any claims for mental anguish as a result of the alleged assault.  Grammer's mental health information prior to ██████████ is not relevant, and certainly not directly relevant, to Grammer's claim for past pain and suffering she suffered as a result of the assault.

---

[6]In her third amended counterclaims, Grammer seeks the following damages: actual and consequential damages resulting from past pain and suffering; nominal damages; exemplary damages; court costs; and all other relief to which she may be entitled.

D. 5/20/16 Br. 6 (citation omitted).  The court holds that, ███████████████ ███████████████████████████████████████████████████████) Dr. Tucker's ███████████treatment of Grammer ████████████████wholly unrelated to Charalambopoulos or the events at issue in this case is neither relevant nor proportional to the needs of the case considering the factors enumerated in Rule 26(b)(1).  Accordingly, Charalambopoulos is not entitled to wholesale discovery of all of Grammer's mental health records from her treatment by Dr. Tucker prior to ███████████  Rather, the motion to compel is granted only to the extent that Charalambopoulos seeks to discover whether, at any time prior to ███████████████████████████████████████████████████████████ ███████

C

The court next considers Charalambopoulos' motion to compel Grammer to disclose the information redacted from certain of Dr. Tucker's treatment notes and to require Dr. Tucker to testify regarding the redacted information.

1

Grammer contends that the redacted portions of session notes on September 27, 2015 and September 29, 2015 pertain to communications between Dr. Tucker and one of Grammer's attorneys "to ensure that legal advice contemplated by Grammer's counsel would not be harmful to Grammer's ███████████" D. 5/20/16 Br. 14.  She maintains that these communications are protected by the attorney-client privilege, as provided in Tex. R. Evid. 503(a)(2)(B) and (b)(1).

The attorney-client privilege exists to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). To achieve this goal, the privilege protects from disclosure "communications from the client to the attorney made in confidence for the purpose of obtaining legal advice." *Wells v. Rushing*, 755 F.2d 376, 379 n.2 (5th Cir. 1985). "'It shields communications from the lawyer to the client only to the extent that these are based on, or may disclose, confidential information provided by the client or contain advice or opinions of the attorney.'" *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 2002 WL 1592606, at *2 (N.D. Tex. July 17, 2002) (Fitzwater, J.) (quoting *United States v. Neal*, 27 F.3d 1035, 1048 (5th Cir. 1994)).

Because Grammer asserts the privilege, she has the burden of proving that it applies to each document that she seeks to protect from disclosure. *See United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982). She must establish as to each document the following elements:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is (the) member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*AHF Cmty. Dev., LLC v. City of Dallas*, 258 F.R.D. 143, 146 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *In re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir. 1975)). Moreover, although the attorney-client privilege serves an important purpose, it also impedes the full and free discovery of truth and therefore should be strictly construed. *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004) (Kaplan, J.) (citing *Perkins v. Gregg Cnty., Tex.*, 891 F. Supp. 361, 363 (E.D. Tex. 1995)); *see also In re Grand Jury Proceedings in re Fine*, 641 F.2d 199, 204 n.5 (5th Cir. Unit A Mar. 1981) ("[T]he attorney-client privilege should be confined within the narrowest limits consistent with its purpose.").

Under Tex. R. Evid. 503(b)(1), the attorney-client privilege protects confidential communications "made to facilitate the rendition of professional legal services to the client . . . between the client *or the client's representative* and the client's lawyer[.]"  The term "client's representative" is defined to include "any other person who, to facilitate the rendition of professional legal services to the client, makes or receives a confidential communication while acting in the scope of employment for the client." Tex. R. Evid. 503(a)(2)(B).  Grammer maintains that

> Dr. Tucker made [the communications on September 27, 2015 and September 29, 2015] while acting in the scope of her employment as Grammer's psychiatrist, and thus was a representative of Grammer for purposes of the Texas Rules of Evidence at that time.  Moreover, the communications were initiated so that Grammer's attorneys could provide legal services to Grammer without jeopardizing Grammer's ███ ███ and thus were necessary to the rendition of legal services.  Accordingly, those communications were made between counsel and his client's representative and were necessary for the rendition of legal services, and thus are

- 14 -

privileged.

D. 5/20/16 Br. 14 (citations omitted).

2

Without conducting an *in camera* inspection, the court cannot determine whether Grammer has met her burden of establishing that the information redacted from the September 27, 2015 and September 29, 2015 session notes is privileged. Accordingly, within 28 days of the date this memorandum opinion and order is filed, Grammer must submit the withheld material for *in camera* inspection. She may either file the material under seal, or she may submit paper versions. If she submits paper versions, the court will order them filed under seal after it makes a ruling so that the record will be complete in case of any appeal.

3

Regarding the redacted portion of the January 13, 2016 session notes, Grammer contends that this redaction pertains solely to a separate ▮▮▮▮▮ matter, wholly unrelated to this lawsuit, and therefore is protected from disclosure by the psychiatrist-patient privilege, and is irrelevant. Charalambopoulos has not responded to this argument.

The court concludes that Grammer has demonstrated, and Charalambopoulos has not refuted, that the redacted portion of the session notes on January 13, 2016 is not relevant. Accordingly, the court denies Charalambopoulos' motion to compel this information.

D

Finally, the court considers Charalambopoulos' motion to compel any correspondence between Dr. Tucker and any individual representing Grammer.

- 15 -

1

Grammer objects to Charalambopoulos' request on the basis that it is overbroad and, to the extent Charalambopoulos seeks communications between Dr. Tucker and Grammer's attorneys, the request calls for the disclosure of privileged communications. Charalambopoulos responds that he is entitled to elicit testimony regarding Grammer's counsel's communications with Dr. Tucker as a treating psychiatrist who has been designated as a non-retained rebuttal expert, and that these communications can be used to show bias and are clearly discoverable.

2

To the extent Charalambopoulos' request for "any correspondence between Dr. Tucker and any individual representing Camille Grammer," P. 4/29/16 Br. 8, seeks correspondence between Dr. Tucker and Grammer's attorneys, the court concludes that Grammer has failed to meet her burden of proving that the attorney-client privilege applies to these documents. She argues that

> [u]pon learning that [Charalambopoulos] would seek Dr. Tucker's deposition in this matter, Grammer's attorneys offered to undertake a limited representation of Dr. Tucker for the purpose of responding to requests for documents, preparing Dr. Tucker for her deposition, and representing her at the deposition. Accordingly, communications between Dr. Tucker and counsel subsequent to that time are protected from disclosure by the attorney-client privilege.

D. 5/20/16 Br. 15-16. Although communications between Dr. Tucker and Grammer's attorneys after Grammer's attorneys agreed to represent Dr. Tucker *could* be protected from

disclosure by the attorney-client privilege,[7] the privilege only applies to confidential communications made for the purpose of obtaining legal advice. Grammer has not established—nor does she even argue—that the correspondence that Charalambopoulos seeks was either confidential or made for the purpose of obtaining legal advice. *See AHF Cmty. Dev., LLC*, 258 F.R.D. at 146 (concluding that certain documents were not subject to attorney-client privilege because "[t]hey do not contain an attorney's legal advice or confidential client communications made to obtain such advice."). Accordingly, the court grants Charalambopoulos' motion to the extent he seeks correspondence between Dr. Tucker and Grammer's attorneys that Grammer has not already produced.[8] Grammer must produce these materials within 28 days of the date this memorandum opinion and order is filed.

To the extent Charalambopoulos requests production of communications between Dr. Tucker and any *other* individual representing Grammer (i.e., someone who is not one of Grammer's attorneys), the court agrees that the discovery request is overbroad, and it also seeks evidence that is not shown to be relevant to any remaining claim or defense. Accordingly, Charalambopoulos' motion to compel is denied in this respect.

E

In summary, the court grants Charalambopoulos' motion to compel discovery relating

---

[7]The court expresses no view on whether the correspondence Charalambopoulos seeks might be protected as attorney work product, because neither Grammer nor her attorneys invoke this protection.

[8]Grammer contends that she has already produced emails that were exchanged between Dr. Tucker and one of Grammer's attorneys before Grammer's attorneys undertook their representation of Dr. Tucker in connection with her deposition.

to whether Dr. Tucker treated Grammer ███████████████████████████

███████████████ orders an *in camera* inspection to decide whether Grammer has met her

burden of establishing that the information redacted from the September 27, 2015 and

September 29, 2015 session notes is privileged; grants the motion to compel the production

of any correspondence between Dr. Tucker and Grammer's attorneys; and otherwise denies

Charalambopoulos' motion to compel. Grammer must produce the materials to

Charalambopoulos, or to the court for *in camera* inspection, in accordance with the deadlines

specified above.

### III

The court now turns to Grammer's motion for sanctions.

### A

The Protective Order in this case provides, in pertinent part:

> [i]f counsel for any party incorporates, discloses, or wishes to
> submit Highly Confidential Information or information reflected
> therein in any brief or other paper, it shall conspicuously
> designate such portion of the brief or paper "HIGHLY
> CONFIDENTIAL" and file it under seal in accordance with
> Local Civil Rule 79.3[.]

Sept. 3, 2015 Order 6. Although the brief and appendix to Charalambopoulos' motion to

compel contain documents marked "Highly Confidential,"[9] Charalambopoulos' attorney did

---

[9]The brief and appendix also contain documents marked "Confidential." With respect
to "Confidential" documents, however, the Protective Order only requires the redaction of
certain information:

> If counsel for any party incorporates, discloses, or wishes to
> submit Confidential Information or information reflected therein

not file these documents under seal. According to Charalambopoulos' attorney, this failure was inadvertent,[10] and as soon as he discovered the mistake, he immediately drafted and filed a motion to seal, which the court granted within hours of the filing.

Grammer seeks the following sanctions based on the failure to file Charalambopoulos' motion to compel and appendix under seal: (1) an order finding Charalambopoulos in civil

---

in any brief or other paper, it shall redact the first seven digits of any telephone numbers belonging to any party, the first seven digits of any telephone numbers in a text message sent to or received from any party, the address number in any party's home address, the first five digits of any individual's social security number or taxpayer identification number, the day and month of an individual's birth date, and all numbers but the last four numbers of a financial-account number.

Sept. 3, 2015 Order 5-6.

[10]In his declaration, Charalambopoulos' attorney avers, in pertinent part:

On Friday, April 22, 2016, I contacted Defendant's Counsel via e-mail for certificate of conference with the intent of filing the Motion to Compel that day since the legal assistant working on the case would be out the following week beginning Monday, April 25 through Monday, May 2, 2016 on vacation. My legal assistant was fully aware of the sensitive and confidential nature included in the motion, and we had discussed prior the motion needing to be filed under seal. Due to not receiving confirmation of Defendant's Counsel being opposed to the motion until Monday, April 25, said legal assistant was unable to file the motion prior to her leaving for vacation. As a result a temporary legal assistant filed the Motion to Compel on April 29, 2016 and was unaware of the confidential nature requiring the motion to be filed under seal. As soon as the error was brought to my attention, I immediately filed a motion to seal that was granted in a matter of hours.

D. 5/27/16 App. 3.

contempt and directing him to pay a fine of $25,000; (2) an order denying

Charalambopoulos' motion to compel; (3) an instruction that will apply to all future

proceedings in this case "to the effect that [Charalambopoulos'] own filing of these materials

on an unsealed basis led to the publication and republication of the allegations of assault in

Houston in October 2013 and of the guardhouse incident in April 2014, so that all or part of

any damages alleged by [Charalambopoulos] as a result of the publication of those matters

was caused by [Charalambopoulos'] own conduct in filing the Motion to Compel without

first obtaining an order sealing that filing as required," D. 5/6/16 Br. 6; and (4) attorney's

fees in the amount of $3,750 for the preparation and filing of Grammer's motion for

sanctions, plus any additional sums incurred in preparing and filing any reply brief.

Charalambopoulos opposes the motion.

## B

Although the court could issue a finding of civil contempt,[11] it would be necessary to

---

[11]To prove that Charalambopoulos should be held in civil contempt, Grammer "must establish by clear and convincing evidence that (1) a court order was in effect, (2) the order required specified conduct by the respondent, and (3) the respondent failed to comply with the court's order." *United States v. City of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004). In the contempt context, "clear and convincing evidence" is "that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (internal quotation marks omitted) (quoting *In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992)) (adopting in contempt context definition of clear and convincing evidence used in attorney disbarment proceeding). "The contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000) (citing *NLRB v. Trailways, Inc.*, 729 F.2d

issue a show-cause notice and conduct a hearing before doing so. *See, e.g., Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 340 (5th Cir. 2015) (addressing procedural requirements for holding alleged contemnor in civil contempt, and stating, in pertinent part, that "[a]dequate notice typically takes the form of a show-cause order and a notice of hearing identifying each litigant who might be held in contempt."). The court considers it unnecessary and wasteful to burden itself and the parties with completing these procedures, considering that the remedy the court would impose in the civil contempt context is likely the equivalent of the one that it finds appropriate in the context of a discovery sanction order. Accordingly, rather than issue a show-cause order and convene a contempt hearing, the court will deny all remedies that Grammer requests[12] except for her request for attorney's fees incurred in preparing the motion for sanctions and her reply brief.

Within 28 days of the date this memorandum opinion and order is filed, the parties must confer and attempt to agree on the amount of reasonable attorney's fees to be awarded to Grammer and on the date by which these fees will be paid. If the parties cannot reach

---

1013, 1017 (5th Cir. 1984)). "Good faith is not a defense to civil contempt; the question is whether the alleged contemnor complied with the court's order." *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir. 2002). It is undisputed that the Protective Order in this case required Charalambopoulos to file his motion to compel and accompanying appendix under seal in accordance with N.D. Tex. Civ. R. 79.3 and that Charalambopoulos failed to do so. *See* P. 5/27/15 Br. 1 ("Plaintiff's counsel inadvertently allowed four pages of documents marked 'highly confidential' to be filed as a regular filing as opposed to filing under seal pursuant to Local Rule 79.3 as specified in this Court's Protective Order.").

[12]The court denies Grammer's request for the imposition of a $25,000 fine, an order denying the motion to compel, and an instruction that Charalambopolous' damages were caused by his own conduct in filing the motion to compel.

agreement, Grammer may file a motion for such reasonable attorney's fees. And if the court grants her relief that is greater than what she sought in the meet and confer process, she will be entitled to additional reasonable attorney's fees and nontaxable expenses incurred in filing her motion for reasonable attorney's fees.

* * *

For the reasons explained, the court grants in part and denies in part Charalambopoulos' motion to compel and Grammer's motion for sanctions, and it in part orders an *in camera* inspection.

**SO ORDERED**.

March 8, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE