IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DIMITRI CHARALAMBOPOULOS, §
§
    Plaintiff-counterdefendant, §
§ Civil Action No. 3:14-CV-2424-D
VS. §
§
CAMILLE GRAMMER, §
§
    Defendant-counterplaintiff. §

MEMORANDUM OPINION
AND ORDER

Defendant-counterplaintiff Camille Grammer ("Grammer") moves to partially modify the court's scheduling order to permit her to file a motion to stay proceedings pending plaintiff-counterdefendant Dimitri Charalambopoulos' ("Charalambopoulos'") or his counsel's satisfaction of attorney's fee award. For the reasons that follow, the court grants the motion.

I

On March 10, 2016 the court awarded Grammer $118,999.61 in attorney's fees and $2,308.05 in expenses ("Award") incurred in connection with her motion to dismiss pursuant to the Texas Citizens Participation Act ("TCPA"), Tex. Civ. Prac. & Rem. Code Ann. § 27.001 *et seq.* (West 2015). On November 11, 2016 Charalambopoulos filed a notice of inability to pay court ordered attorney's fees, attaching in support an affidavit stating that he does not have the funds to satisfy the Award. On June 7, 2017 the court ordered Charalambopoulos to produce to Grammer the contingent fee agreement ("Fee Agreement")

that he had entered into with Provost Umphrey, the law firm representing him in this suit. Allegedly based on the contents of the Fee Agreement, which was produced to Grammer on June 29, 2017, Grammer now seeks to modify the scheduling order[1] to permit her to file a motion to stay.

II

A

Fed. R. Civ. P. 16(b)(4) governs a party's request to modify a scheduling order. *Cartier v. Egana of Switz. (Am.) Corp.*, 2009 WL 614820, at *2 (N.D. Tex. Mar. 11, 2009) (Fitzwater, C.J.). To modify the scheduling order, a party must demonstrate good cause and obtain the judge's consent. *Id.*

"The 'good cause' standard focuses on the diligence of the party seeking to modify the scheduling order." *Cut-Heal Animal Care Prods., Inc. v. Agri-Sales Assocs., Inc.*, 2009 WL 305994, at *1 (N.D. Tex. Feb. 9, 2009) (Fitzwater, C.J.). The good cause standard "require[s] the movant 'to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Puig v. Citibank, N.A.*, 514 Fed. Appx. 483, 487-88 (5th Cir. 2013) (per curiam) (quoting *S & W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)). "Mere inadvertence on the part of the movant and the absence of prejudice to the non-movant, are insufficient to establish 'good cause.'"

---

[1] Under the court's May 9, 2016 order granting joint motion to partially modify scheduling order, the deadline for filing motions not otherwise covered by the scheduling order was July 15, 2016.

*Price v. United Guar. Residential Ins. Co.*, 2005 WL 265164, at *4 (N.D. Tex. Feb. 2, 2005) (Fish, C.J.) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)). Instead, the movant must show that, despite her diligence, she could not reasonably have met the scheduling deadline. *See S & W Enters.*, 315 F.3d at 535; *Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.) (citing 6A Charles Alan Wright, et al., *Federal Practice & Procedure* § 1522.1 at 231 (2d ed. 1990)).

"In determining whether the movant has met its burden under Rule 16(b)(4), the court considers four factors: (1) the party's explanation, (2) the importance of the requested relief, (3) potential prejudice in granting the relief, and (4) the availability of a continuance to cure such prejudice." *Cartier*, 2009 WL 614820, at *3 (citing *S & W Enters.*, 315 F.3d at 536). The court considers the four factors holistically and "does not mechanically count the number of factors that favor each side." *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012).

B

1

The court first considers Grammer's explanation. Grammer contends that she has good cause to seek to modify the deadline for the limited purpose of permitting her to file the motion to stay proceedings because Charalambopoulos did not assert his alleged inability to pay until November 11, 2016, and because Grammer's counsel did not receive the documents on which Grammer is basing her motion to stay proceedings until June 29, 2017, fewer than two weeks before she filed the instant motion and long after the motions deadline set by the

scheduling order.

Charalambopoulos responds that, although Grammer did not receive the Fee Agreement until June 29, 2017, that agreement did not provide Grammer with any new information that could support her motion; that Grammer and her counsel knew long before the scheduling order deadline that Provost Umphrey had paid debts and expenses for Charalambopoulos in the past; that Grammer has taken inconsistent positions in this case, arguing on the one hand "that good cause exists to file her untimely Motion to Stay the proceedings pending payment of the award because Charalambopoulos first claimed an inability to pay after the scheduling order deadline, while on the other hand . . . oppos[ing] Charalambopoulos' motion to stay the enforcement of the award based on a very real possibility that Charalambopoulos would be unable to pay," P. Br. 6; and that Grammer offers no explanation for why she filed her motion to stay in July 2017, which was eight months after Charalambopoulos filed his notice and merely five months before the trial setting. In sum, Charalambopoulos contends that, given Grammer's awareness of facts supporting her motion and the absence of any legitimate explanation for her delay, the first factor weighs against Grammer.

In her reply, Grammer contends that, contrary to Charalambopoulos' assertion, the Fee Agreement *does* contain information that was previously unknown to Grammer (i.e., language in the Fee Agreement that obligates Provost Umphrey to pay or advance funds to satisfy the Award on Charalambopoulos' behalf), and that the touchstone of her motion to stay is the express language contained in the Fee Agreement. Grammer also maintains that

she has been diligent in pursuing possible remedies to recover the Award, filing her motion seeking discovery of Charalambopoulos' inability to pay seven days after Charalambopoulos filed his notice of inability to pay, and filing the instant motion thirteen days after she received the Fee Agreement.

The court concludes that Grammer's explanation is satisfactory. In deciding whether to grant Grammer's motion to amend the scheduling order, the court does not consider whether Grammer will ultimately prevail on the merits of her motion to stay. It is sufficient that Grammer has shown that she did not have sufficient grounds to prevail on a motion to stay until she received the contents of the Fee Agreement on June 29, 2017. The court concludes that this factor weighs in favor of amending the scheduling order.

2

The court next considers the importance of the requested relief. Grammer contends that the motion to stay is important because the Award remains unsatisfied and the incentive for Charalambopoulos or his counsel to satisfy the Award will in all likelihood vanish once this litigation concludes. She maintains that the stay that she seeks may be the only mechanism to recover the Award.

Charalambopoulos responds that the only reason he has not paid the Award is because he cannot afford to pay it; that the conclusion of the litigation has no bearing on his obligation to pay the Award; and that Grammer's bare assertions in support of this factor are conclusory and speculative. Grammer contends in reply that the Award she seeks to recover was rendered under the TCPA, and that "[g]iven the emphasis Texas law places upon

payment of attorneys' fees under the TCPA, the issue is sufficiently important that the Court should grant Grammer leave to file her Motion to Stay Proceedings and address the issue on its merits." D. Reply 5.

The court concludes that this factor weighs slightly in favor of amending the scheduling order. Although the motion Grammer seeks to file is not case-dispositive, she correctly maintains that, under Texas law, she is entitled to an award of attorney's fees in connection with the court's dismissal of certain claims under the TCPA. The court concludes that, to the extent the relief Grammer seeks will help her obtain payment of the Award to which she is legally entitled under Texas law, it is important.

3

The court next considers as the third factor whether Charalambopoulos will be prejudiced if the court grants the requested relief. Charalambopoulos contends that the relief Grammer seeks would unduly prejudice him because "granting her Motion would have the practical effect of denying Charalambopoulos his day in court indefinitely despite doing no wrong." P. Br. 12. The court disagrees that the prejudice Charalambopoulos describes will result from the court's amending the scheduling order. In arguing that he will be prejudiced, Charalambopoulos presupposes that the court will *grant* the motion that Grammer seeks to file. But in deciding the instant motion, the court is not considering whether Grammer should ultimately prevail on her motion to stay; it is considering only whether she should be permitted to file the motion. Charalambopoulos has not established any prejudice that he will suffer if the court amends the scheduling order to permit Grammer to file the motion to stay.

The court concludes that the third factor weighs in favor of amending the scheduling order.

4

The fourth factor is the availability of a continuance to cure such prejudice. Because the court concludes that Charalambopoulos has not shown that he will be prejudiced by permitting Grammer to file her motion to stay, and because the court can continue trial of this case, if necessary, to cure any prejudice that Charalambopoulos will incur as a result of amending the scheduling order so that Grammer can file the motion to stay, the court concludes that this factor weighs in favor of granting Grammer's motion.[2]

5

Assessing the four factors holistically, the court concludes that Charalambopoulos has established good cause to modify the Scheduling Order. The court "does not mechanically count the number of factors that favor each side [,][a]nd it remembers at all times that the good cause inquiry focuses on the diligence of the party seeking to modify the scheduling order." *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3. Grammer has offered a satisfactory explanation for the delay in filing her motion to stay (i.e., she did not have the evidence she needed to support the motion until recently), the motion is important insofar as it will enable Grammer to seek from this court relief related to the attorney's fees to which she is entitled under the TCPA, and Charalambopoulos has not demonstrated that he will be prejudiced if the court merely permits Grammer to file her motion to stay. Accordingly, the

---

[2]The trial in this case is currently set for the two-week docket of December 4, 2017.

- 7 -

court grants them motion.

C

Grammer has included her proposed motion to stay in a sealed appendix filed in support of her motion to partially modify scheduling order. The court directs the clerk of court to file under seal ECF document No. 219-1, which is Grammer's motion to stay.

\* \* \*

For the reasons explained, the court grants Grammer's motion to partially modify scheduling order to permit defendant-counterplaintiff to file a motion to stay proceedings pending plaintiff's or his counsel's satisfaction of attorney's fee award. The court directs the clerk of court to file under seal ECF document No. 219-1, which is Grammer's motion to stay.

**SO ORDERED**.

October 23, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE