IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DIMITRI CHARALAMBOPOULOS,　　§
　　　　　　　　　　　　　　　　§
　　　　　Plaintiff-counterdefendant,　§
　　　　　　　　　　　　　　　　§　Civil Action No. 3:14-CV-2424-D
VS.　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　　§
CAMILLE GRAMMER,　　　　　§
　　　　　　　　　　　　　　　　§
　　　　　Defendant-counterplaintiff.　§

MEMORANDUM OPINION
AND ORDER

Defendant-counterplaintiff Camille Grammer ("Grammer") moves to stay this lawsuit

pending the payment by plaintiff-counterdefendant Dimitri Charalambopoulos

("Charalambopoulos") or his counsel of the court's attorney's fee award under the Texas

Citizens Participation Act ("TCPA"), Tex. Civ. Prac. & Rem. Code Ann. § 27.001 *et seq.*

(West 2015), an anti-SLAPP[1] statute. For the reasons that follow, the court grants the motion

to the extent set out in this memorandum opinion and order,[2] vacates the trial setting, and

---

[1]"SLAPP is an acronym for strategic lawsuit against public participation."
*Charalambopoulos v. Grammer*, 2015 WL 390664, at *1 n.1 (N.D. Tex. Jan. 29, 2015)
(Fitzwater, J.) (citation omitted).

[2]On June 7, 2017 the court ordered that Charalambopoulos produce to Grammer the
contingent fee agreement ("Fee Agreement") that he entered into with Provost Umphrey, the
law firm that represents him in this lawsuit. The Fee Agreement provides, *inter alia*, that
"[a]ll costs or out-of-pocket expenses incurred . . . in litigating [Charalambopoulos' claim
against Grammer] *shall* be financed by [Provost Umphrey]." P. Br. 3 (quoting P. App. 4).
Grammer contends that, under the terms of the Fee Agreement, Charalambopoulos' counsel
is obligated to advance the funds necessary to pay the Award. In granting Grammer's motion
to stay, the court expresses no view on whether Charalambopoulos' counsel is obligated
under the terms of the Fee Agreement, or otherwise, to advance to Charalambopoulos any

administratively closes this case for statistical purposes during the pendency of the stay.

I

In March 2016 the court awarded Grammer $118,999.61 in attorney's fees and $2,308.05 in expenses ("Award") incurred in moving to dismiss Charalambopoulos' suit under the TCPA. In November 2016 Charalambopoulos filed a notice, supported by an affidavit, stating that he lacks the funds to satisfy the Award. Grammer now moves the court to condition Charalambopoulos' continued pursuit of his remaining claims against her on his or his counsel's payment of the Award, or, alternatively, upon the posting of a bond in the full amount of the Award.

II

A district court has discretion to stay proceedings on its docket. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* The party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Id.* at 255. "The determination of whether to stay proceedings is best determined by weighing the competing interests of the parties and of the Court." *Miramore Tr. v. United Van Lines, LLC*, 2017 WL 661374, at *4 (N.D. Tex. Feb. 17, 2017) (Fitzwater, J.) (quoting

---

of the costs associated with this lawsuit, including the funds necessary to satisfy the Award.

*Busk v. Integrity Staffing Solutions, Inc.*, 2013 WL 4786254, at *2 (D. Nev. Sept. 5, 2013)).

III

A

Grammer moves the court to stay this case as to Charalambopoulos' remaining claims until Charalambopoulos or his counsel pays the Award in full or posts a bond in the full amount of the Award. She contends, *inter alia*, that Charalambopoulos' opportunity to pursue his claims against her is an asset that belongs to Charalambopoulos; as long as this dispute has not yet been litigated to a conclusion, the potential denial of Charalambopoulos' opportunity to pursue the litigation creates an incentive for him to satisfy the Award by whatever means necessary; once the litigation concludes and the right to further pursue the litigation has passed, Charalambopoulos' incentive to satisfy the Award will disappear; unless the court imposes some consequence for Charalambopoulos' failure to satisfy the Award, he has no incentive to satisfy it; there is no undue harm in requiring Charalambopoulos and his counsel to secure satisfaction of the Award, either via present payment or an appropriately conditioned bond in the full amount of the Award; and absent a stay, there will be a very real risk that the Award will go forever unsatisfied.

Charalambopoulos responds that Grammer has offered no evidence to contradict his sworn testimony that he cannot pay the Award; the relief Grammer requests is a sanction that penalizes him for his inability to pay, but that Grammer never sought, and the court never imposed, sanctions against Charalambopoulos or his attorneys under the TCPA; nothing in the Fee Agreement between Charalambopoulos and his counsel obligates Charalambopoulos'

counsel to satisfy the Award; and a stay under these circumstances would deprive Charalambopoulos of his right to due process, and his inability to pay should not be used to deprive him of his day in court.

B

The TCPA seeks "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002. "To promote these purposes, [the TCPA] creates an avenue at the early stage of litigation for dismissing unmeritorious suits that are based on the defendant's exercise of the rights of free speech, petition, or association as those rights are defined within the [statute]." *In re Lipsky*, 411 S.W.3d 530, 539 (Tex. App. 2013, orig. proceeding). As a corollary to early dismissal of unmeritorious claims, the TCPA also mandates an award of costs, reasonable attorney's fees, and other expenses when the court grants a motion to dismiss under the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(1) ("the court *shall award* to the moving party: (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require." (emphasis added)); *see also Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016) ("Based on the statute's language and punctuation, we conclude that the TCPA *requires* an award of 'reasonable attorney's fees' to the successful movant." (emphasis added)).

The court has already dismissed several of Charalambopoulos' claims, holding that

they are meritless attempts to suppress Grammer's First Amendment rights. *See, e.g.,*

*Charalambopoulos v. Grammer*, 2015 WL 2451182 (N.D. Tex. May 22, 2015) (Fitzwater,

J.); *Charalambopoulos v. Grammer*, 2015 WL 390664 (N.D. Tex. Jan. 29, 2015) (Fitzwater,

J.). It has also awarded Grammer attorney's fees and costs under the TCPA. *See*

*Charalambopoulos v. Grammer*, 2016 WL 915739 (N.D. Tex. Mar. 10, 2016) (Fitzwater, J.).

Charalambopoulos maintains that he cannot afford to pay the TCPA-mandated Award, and

he urges the court to allow him to proceed to trial on his remaining claims—the claims that

were not subject to dismissal under the TCPA—without first satisfying the Award.

C

The court concludes that Charalambopoulos should be required to pay the Award in

full, post a bond in the full amount of the Award, or place sufficient funds to cover the

Award into a segregated account before he is allowed to proceed with the litigation of his

remaining claims. "The TCPA recognizes the need to protect those filing meritorious

defamation claims but seeks to punish or deter, through the assessment of attorney's fees and

sanctions, those who abuse [the defamation action] to silence others who otherwise have a

constitutional right to speak freely." *Whisenhunt v. Lippincott*, 416 S.W.3d 689, 696 (Tex.

App. 2013), *rev'd on other grounds*, 462 S.W.3d 507 (Tex. 2015) (per curiam); *see also*

*Williams v. Cordillera Commc'ns, Inc.*, 2014 WL 6674087, at *1 (S.D. Tex. Nov. 24, 2014)

(describing TCPA attorney's fees provision as "equivalent to that permitted for vexati[ous]

litigation tactics in Fed. R. Civ. P. 11 and 37, as well as 28 U.S.C. § 1927."). Although a

court may be inclined to view sympathetically a litigant's impecuniosity when it deprives

him of his day in court, a court applying the TCPA must also account for the statute's

underlying purposes and the rights it creates. *See Whisenhunt*, 416 S.W.3d at 696; *see also*

*Williams*, 2014 WL 6674087, at *1. In an apparent attempt to deter SLAPP litigation, the

TCPA provides for mandatory awards of attorney's fees and sanctions[3] when a court

dismisses a claim under the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a); *see*

*also Sullivan*, 488 S.W.3d at 299; *Serafine v. Blunt*, 2017 WL 2224528, at *7 (Tex. App.

May 19, 2017) (mem. op.) (observing that Supreme Court of Texas has not specifically

addressed issue of whether sanctions under TCPA are mandatory, but "in *Sullivan* it noted

without disapproval the appellate court's determination the TCPA 'made an award of

sanctions mandatory,' 'tempered by' the amount the trial court determines sufficient to deter

similar actions" and remanding to trial court for determination of reasonable attorney's fees

and amount of sanctions to be awarded under § 27.009 (citation omitted)). Based on the

mandatory nature of § 27.009(a), the court concludes that the Texas Legislature intended that

the availability of attorney's fees and sanctions act as a deterrent against SLAPP litigation.

In requiring that Charalambopoulos pay the Award in full, post a bond in the full

amount of the Award, or place sufficient funds to cover the Award into a segregated account

before he can proceed with his remaining claims, the court is not, as Charalambopoulos

---

[3]Charalambopoulos notes in his response to Grammer's motion that Grammer never sought, and the court never imposed, sanctions against Charalambopoulos or his counsel. Although Charalambopoulos is correct that the court did not impose sanctions as required under the TCPA, the court also never held that sanctions were *not* warranted. Nor does the fact that the court did not award sanctions undermine its conclusion that the Texas Legislature intended that the TCPA be punitive in effect.

contends, "penaliz[ing] Charalambopoulos *for his inability to pay*." P. Br. 6 (emphasis added). It is implementing the remedy that the Texas Legislature intends to act as a deterrent to SLAPP suits. In fact, were the court to adopt Charalambopoulos' position, an impecunious plaintiff could assert SLAPP claims with impunity, with the knowledge that he would be able to proceed to trial on any claims that the trial court did not dismiss. The TCPA would effectively be gutted of its tools for deterring the very litigation that it was adopted to curtail. In order for the TCPA to have teeth, as the Texas Legislature intended, *see* Tex. Civ. Prac. & Rem. Code Ann. § 27.011(b) ("[t]his chapter shall be construed liberally to effectuate its purpose and intent fully,"), a party who does not pay attorney's fees or sanctions as ordered must suffer a consequence that is calculated to deter him from bringing the SLAPP suit in the first instance. Knowledge that his lawsuit will be stayed until he satisfies such an award should act as such a deterrent.

In addition, Grammer is entitled to recover her attorney's fees, at least in part, to compensate her for the expenses of responding to claims barred by the TCPA. *See, e.g., Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi*, 45 Cal.Rptr.3d 633, 637 (Cal. Ct. App. 2006) (noting that California Anti-SLAPP statute's attorney fee provision, which mirrors fee provision in TCPA, "is intended to compensate a defendant for the expense of responding to a SLAPP suit. To this end, the provision 'is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extracting herself from a baseless lawsuit." (citations omitted)). Grammer should not be required to incur additional—perhaps substantial—expenses defending against

Charalambopoulos' remaining claims at the risk that the attorney's fees to which she is statutorily entitled under the TCPA will never be paid. *See, e.g., Sarver v. Hurt Locker LLC*, 2012 WL 12892147, at \*3 (C.D. Cal. Feb. 2, 2012) (denying plaintiff's request to waive supersedeas bond requirement in order to stay execution of attorney's fees awarded under California Anti-SLAPP statute pending appeal, and noting that "the Court cannot place Defendants' statutory right to recovery at risk solely on the basis of Plaintiff's ability to pay."). By requiring that Charalambopoulos pay the Award in full (or make alternate arrangements that assure that the Award will be paid after a final judgment is rendered), the court protects Grammer's statutory right to recover attorney's fees under § 27.009(a).

Weighing the competing interests of the parties and the court, and taking into account the underlying purposes of the TCPA, the court concludes in its discretion that this action should be stayed. In view of the stay, the court vacates the trial setting and administratively closes this case for statistical purposes during the pendency of the stay. Once Charalambopoulos pays the Award in full, posts a bond in the full amount of the Award, or places sufficient funds to cover the Award into a segregated account, he may move the court to reopen the case for statistical purposes, lift the stay, and set the case for trial.

\* \* \*

Accordingly, to the extent set out in this memorandum opinion and order, the court grants Grammer's motion to stay proceedings pending plaintiff's or his counsel's satisfaction of attorney's fee award.

**SO ORDERED**.

January 23, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE